Arnold L. Fein, J.
On November 14,1962, at approximately noon, plaintiff and bis now deceased wife entered an automatic *189 elevator on the ninth floor at 740 West End Avenue, Manhattan, a 100-family apartment house where they resided, intending to descend to the street. A woman and a baby in a stroller were in the elevator, which ascended to the eleventh floor, where the lady and baby left the elevator. Plaintiff then pushed the elevator button for the street level. The elevator car began to descend at a normal rate of speed. Suddenly, there was a surge of speed and the elevator car began to sway and to go down “like a shot”. Plaintiff pressed the stop switch to no avail. The elevator car continued down the shaft at an increasing rate of speed and did not stop until it hit bottom, when it stopped forcefully, a few inches below street level, causing plaintiff and his wife to be thrown about and to sustain the injuries for which they sue.
Plaintiff was unable to open the elevator door. He pressed the alarm switch for assistance. He and his wife were trapped in the elevator between 15 minutes and one half hour before the elevator door was opened from the outside by emergency personnel.
The building owner’s manager, who resided in the building, called as plaintiffs ’ witness, testified he regularly used the elevator and that it was in good working order until the time of the accident. He knew nothing of how elevators function, and was neither an elevator mechanic nor an expert. The owner, Wolk Properties, Inc. (Wolk), employed no elevator service personnel nor anyone else qualified to inspect or repair the elevator. The manager acknowledged receipt of a City of New York, Department of Buildings, notice of violation, dated August 13, 1962, notifying landlord of a violation, filed July 25,1962, in pertinent part directing the landlord to “ overhaul and properly repair speed governor ’ ’.
The manager testified that (1) the notice of violation had been forwarded to the codefendant, Herk Elevator Maintenance, Inc. (Herk); (2) Herk had made repairs, pursuant to a maintenance contract between Wolk and Herk, received in evidence, which had been in force since January 1, 1960; and (3) he had received a card notification that the violation had been removed. However, although the Building Department records were in the courtroom, the manager was unable to produce the card or any other evidence of the removal of the violation or any communication to or from Herk relating to repair, or compliance with the notice of violation. He did not remember when the violation had been removed, although he testified Herk had worked on the elevator and repaired the elevator after it was notified of the violation.
*190 Plaintiffs then rested. . Decision was reserved on defendants’ motions to dismiss.
As against defendant Wolk, the landlord, plaintiffs were entitled to rely on the doctrine of res ipsa loquitur to make ont a prima facie case (Langner v. Jessup Holding, Inc., 10 A D 2d 1, mod. 9 N Y 2d 871). The accident was of a kind which ordinarily would not occur in the absence of someone’s negligence. It was caused by an agency within the control of defendant landlord. The accident was not caused by any voluntary action or contributory negligence on the part of the plaintiffs (Corcoran v. Banner Super Market, 19 N Y 2d 425; Abbott v. Page Airways, 23 N Y 2d 502; Grifen v. Manice, 166 N. Y. 188; Beinhocker v. Barnes Development Corp., 296 N. Y. 925; Zaninovich v. American Airlines, 26 A D 2d 155; Whylie v. Craig Hall, Inc., 272 App. Div. 603; see Koch v. Otis Elevator Co., 10 A D 2d 464).
It is immaterial that the complaint and bill of particulars alleged particular acts of negligence on the part of both defendants. It is of no avail to defendant landlord that plaintiffs did not indicate in their complaint and bill of particulars that they would rely on res ipsa loquitur (Whylie v. Craig Hall, Inc., supra; DeRoire v. Lehigh Val. R. R. Co., 205 App. Div. 549; Abbott v. Page Airways, supra).
Plaintiffs were not deprived of the benefit of res ipsa loquitur because they sought to bolster their case by calling landlord’s managing agent as their witness and proving through him landlord’s knowledge of the existence of a defect alleged to be causally connected with the accident. Such evidence did not purport to furnish a complete explanation of the occurrence. It was fully consistent with the inference of negligence to which plaintiffs were entitled upon mere proof of the accident. Accordingly its introduction did not preclude reliance on res ipsa (Abbott v. Page Airways, supra; Whylie v. Craig Hall, Inc., supra; Corcoran v. Banner Super Market, supra). The court was not obliged to and did not credit the testimony of the agent that the defect was repaired by Herk, particularly in the light of the agent’s failure either to produce the-removal notice or to show from the records of the Building Department or otherwise that the violation had been removed, or that the defect had been repaired (Piwowarski v. Cornwell, 273 N. Y. 226; Mueller v. Abington Warehouses, 17 A D 2d 967; St. Andrassy v. Mooney, 262 N. Y. 368). Although not pertinent on the motion to dismiss on plaintiffs’ case, it is noted that on the whole case this defect was shown to be the proximate cause of the accident.
The duty of the landlord to maintain the elevator is beyond *191 dispute (Multiple Dwelling Law, § 78; Griffen v. Manice, supra; Beinhocker v. Barnes Development Corp., supra; Langner v. Jessup Holding Inc., 10 A D 2d 1, mod. 9 N Y 2d 871, supra).
Accordingly, the motion of defendant, Wolk, to dismiss on plaintiffs ’ case must be denied.
The authorities do not support plaintiffs’ effort to invoke res ipsa loquitur against Herk, the maintenance company. The requisite element of exclusive control is said to be lacking in most maintenance company cases. (Beinhocker v. Barnes Development Corp., supra; Koch v. Otis Elevator Co., supra; Ames v. Watson Elevator Co., 303 N. Y. 732; Ames v. Jalpur Realty Corp., 20 Misc 2d 656; Stafford v. Sibley, Lindsay & Curr Co., 280 App. Div. 495; Langner v. Jessup Holding Inc., supra).
The doctrine of the cases is that res ipsa may not be invoked against an elevator maintenance company in the absence of: (1) a provision in its contract with the landlord reserving control, or (2) a finding of its physical presence on the premises at the time of the accident or shortly before. This rule seems to give inadequate recognition to the fact that in most modern buildings actual control as a practical matter is manifestly in both the landlord and the maintenance company where, as here, their contract requires the elevator maintenance company regularly to inspect and repair.
Where the defect causing the accident is obviously in the mechanical or motor or safety apparatus of an elevator, the circumstances are such that an inference of negligence should be warranted against both owner and the maintenance company, in the absence of explanation. The unwitting passenger is surely the last to know what went wrong or why. Ordinarily there are no other intervening agencies. The emerging rule as to what makes a prima facie automobile negligence case on behalf of passengers would seem to point the direction (Pfaffenbach v. White Plains Express Corp., 17 N Y 2d 132 — car on the wrong side of the road; Czekela v. Meehan, 27 A D 2d 565, affd. 20 N Y 2d 686 — car out of control; Carter v. Castle Elec. Contr. Co., 26 A D 2d 83 — rear end collision; Knise v. Shearer, 30 A D 2d 741 — skidding). An explanation by defendant is now held to be called for in such cases. The same policy and practical considerations might well apply in elevator maintenance cases.
An appropriate rationale may also be drawn from the cases holding that even where a number of persons are in control, if the circumstances require an explanation, res ipsa may be invoked against any or all of them. (Schroeder v. City & County *192 Sav. Bank, 293 N. Y. 370; Corcoran v. Banner Super Market, supra.)
The facts adduced by plaintiffs in their case would appear to warrant invocation of res ipsa loquitur in their favor, even under current doctrine. However, even without benefit of the rule, there is sufficient evidence to require denial of Herk’s motion to dismiss on plaintiffs’ case.
Although Herk’s .obligations with respect to the inspection, maintenance, servicing and repair of the elevator were undertaken by way of contract, the nature of the instrumentality involved imposed upon Herk the legal duty to perform those contractual obligations in a reasonably careful and prudent manner for the benefit of tenants using the elevator, including plaintiffs, even though they were not parties to the maintenance agreement. (Wroblewski v. Otis Elevator Co., 20 A D 2d 732, and 9 A D 2d 294; Wisner v. Harmas Holding Corp., 1 AD 2d 957; Koch v. Otis Elevator Co., supra; Kelly v. Watson Elevator Co., 309 N. Y. 49; Beinhocker v. Barnes Development Corp., supra; Rosenbaum v. Branster Realty Corp., 276 App. Div. 167; Kahner v. Otis Elevator Co., 96 App. Div. 169, affd. 183 N. Y. 512.)
The injured elevator passenger is entitled to recourse against the maintenance company for its negligent performance of its contract with the owner if the passenger establishes such negligence by proving the specific cause of the failure of the elevator and showing either that the maintenance company had prior knowledge of the condition which caused the accident and failed to act with reasonable care to correct it, or that, upon actual inspection, it failed to use reasonable care to discover and then correct the condition which ought to have been found (Koch v. Otis Elevator Co., supra; Wroblewski v. Otis Elevator Co., supra; Kelly v. Watson Elevator Co., supra).
Plaintiffs proved the existence of a defect in the speed governor, of which defendant Herk had notice and on which Herk worked under its contract. This was sufficient for a prima facie case, requiring an explanation.
Defendant Herk’s motion to dismiss on plaintiffs’ case is denied.
Herk’s president, called as defendant Wolk’s witness, acknowledged the existence .of the contract and receipt of notice of the July 24, 1962 violation. He asserted that one of his servicemen did some repair work required by the notice. He denied clearing the violation as to the speed governor. He testified the work was done by one man shortly after receipt *193 of notice of violation but he did not remember when, and produced no evidence of what work was done.
Landlord’s expert witness testified that in his opinion the November 14, 1962 accident was causally related to the defects noted in the violation, filed on July 25, 1962, and that the accident occurred because a defect in the driving motor caused an overspeed while descending. This was evidenced by the surge of speed while the elevator was descending at a normal speed. Because of the defect in the driving motor, the speed governor failed to synchronize properly, thus abdicating its safety effect, bypassing the speed limiting devices. He testified if the elevator were properly maintained, the surge of .speed of the descending elevator would actuate the speed governor, which would cause the elevator to slow to a gradual and easy stop.
Proper inspection would have revealed the defect. The driving motor provides the motive power of the elevator. The shunt field, a semi-enclosed integral part of the driving motor, was defective. The shunt field consists of a series of pole pieces wrapped with an extensive, lengthy coil of insulated wire, creating a magnetic field. A short circuit inside this coil unbalances the driving motor and causes elevator overspeed while descending and also affects the speed calibrator of the speed governor so that the latter cannot properly perform its function of causing the elevator to slow to a gradual stop in the event the elevator is descending too rapidly.
A .short circuit is usually caused by a breakdown of the insulation of the wires of the coil. This was the defect in this case. Because of the construction and covering of the coil, mere visual inspection of the shunt field does not reveal such a defect. However, there are meter devices which would indicate a defect in the shunt field insulation likely to cause a short circuit. The testimony indicated that such meters are not usually employed in the routine inspection of elevators, although the purpose of such inspections is to determine, inter alia, if such a short circuit exists and whether the safety devices are working.
The evidence adduced by landlord established beyond doubt that the accident was caused by the defect in the shunt field and speed governor, that the defendant Herk had knowledge thereof and that defendant Herk had worked on the elevator pursuant to the contract, in response to the notice of violation and had failed to remedy the defect.
Accordingly, the motion of the defendant Herk to dismiss the cross complaint at the conclusion of landlord’s case is denied.
*194 Herk’s president testified that: (1) the accident was caused by a .short circuit in the shunt field, revealed on examination of the shunt field at his place of business two or three days after the accident; (2) the cause of the short circuit could not be determined because it is impossible to ascertain what causes a short circuit in the shunt field; (3) the shunt field became defective for reasons unknown to anyone; (4) a defect in the inside of the coil is not susceptible of visual inspection; (5) visual inspection is utilized for inspecting shunt fields; (6) a shunt field “ tests good ” before it is defective and “ tests bad ” after it is defective; and (6) it is not possible to determine either that a shunt field will ‘ ‘ blow ’ ’, or what causes it to blow. He conceded that pursuant to the contract with Wolk, Herk had regularly serviced the elevator prior to the accident. He contended that the shunt field must have been operating properly when the elevator came to the ninth floor, because the elevator would not work properly if the shunt field were defective.
Herk’s expert concurred with landlord’s expert that a shunt field blows because of a breakdown of insulation in the coil, a defect which would not be revealed on visual inspection. He testified that an ohmmeter reading is necessary to determine whether the shunt field is in proper condition and that an elevator cannot operate at normal speed with a defective shunt field. He further testified that if the shunt field blew while a passenger was in a descending elevator, there would be an overspeed.
Thus all of the experts testified that the accident was caused by a short circuit in the shunt field. Two testified that the short circuit could have been discovered by using a meter, rather than by relying wholly and solely upon visual inspection. Of the three experts, only the president of defendant Herk, the maintenance company, testified it was impossible to determine what caused the short circuit, and that the defect could not be discovered in advance of the accident. He has been in the elevator maintenance business for 30 years, and his company services hundreds of elevators in New York City, “most good buildings ”. Herk’s own expert testified there are many elevators in New York City utilizing this type of shunt field.
The attempt of Herk to establish that it was not negligent because the defect could not be ascertained upon visual inspection, which is the routine type of inspection, cannot be accepted. It had notice of the defect and did some kind of work with respect thereto. Its effort to escape liability on the theory that its performance was in accordance with routine custom and practice must be rejected. Although custom and usage is admis *195 sible as tending to establish a standard by which ordinary care may be judged, it is neither controlling nor the precise measure of such duty (Shannahan v. Empire Eng. Corp., 204 N. Y. 543; O’Connor v. 595 Realty Assoc., 23 A D 2d 69, app. dsmd. 17 N Y 2d 493; Danbois v. New York Cent. R. R. Co., 12 N Y 2d 234). It is inconceivable that this maintenance company whose president testified that it maintains thousands of elevators in good buildings in this city may be permitted to escape liability because its routine inspection, involving only visual examination, would not or did not disclose the precise defect. The evidence of both its own expert and the landlord’s expert demonstrated that the use of a meter device would reveal such defect. This must be held to measure the ordinary standard of care required of a reasonably prudent elevator maintenance company.
In these days of lofty buildings and the annual transportation of millions of passengers in elevators such a standard of care is reasonable.
Moreover, Herk had notice of the defect which was the proximate cause of the accident and worked on it.
Plaintiffs are entitled to judgment on the issue of liability-against defendant Herk.
The remaining issue is the cross complaint of defendant Wolk against defendant Herk. The cross complaint must be dismissed. The duty imposed on the defendant Wolk was nondelegable (Sciolaro v. Asch, 198 N. Y. 77; Griffen v. Manice, supra; Whylie v. Craig Hall, Inc., supra; Ames v. Watson Elevator Co., supra; Ames v. Jalpur Realty Corp., supra).
The defendant Wolk had knowledge of the existence of the defect. It did not discharge its duty simply by having a maintenance contract or by sending the violation notice to the maintenance company. The landlord had an affirmative duty to insure that the defect, of which it had knowledge, was remedied. Its failure to discharge this duty was active negligence. There was no contract to indemnify. Policy considerations obviously militate against finding implied indemnity. (Bush Term. Bldgs. v. Luckenbach S. S. Co., 9 N Y 2d 426; Adler v. Tully & Di Napoli, 300 N. Y. 662; Inman v. Binghamton Housing Auth., 3 N Y 2d 137; see Thompson-Starrett Co. v. Otis Elevator Co., 271 N. Y. 36.) Hnder the 'circumstances, Wolk’s cross complaint against Herk must be dismissed.
The parties waived trial by jury and stipulated that the court should try the issue of liability only, first, and then try the issue of damages if liability were found.
Both defendants had knowledge of the defect which was the proximate cause of the accident and failed to repair it.
*196 The court finds for the plaintiffs against both defendants on the issue of liability and against the defendant Wolk on its cross complaint.
Defendants’ motions to dismiss the complaint on plaintiffs’ case and on the whole case are denied.
Defendant Herk’s motion to dismiss the cross complaint of the defendant Wolk is granted.
Defendant Wolk’s motion for judgment against defendant Herk is denied.