EDWARD J. ROSE, PLAINTIFF-APPELLANT, v. THE PORT OF NEW YORK AUTHORITY, DEFENDANT-RESPONDENT.

Argued March 20, 1972—Decided July 7, 1972.

130

*Mr. Matthew P. Boylan* argued the cause for appellant (*Messrs. Lowenstein, Sandler, Brochin, Kohl and Fisher,* attorneys; *Mr. Boylan,* of counsel and on the brief).

*Mr. Francis A. Mulhern* argued the cause for respondent (*Mr. Sidney Goldstein,* of the New York bar, of counsel, and on the brief).

The opinion of the Court was delivered by

MOUNTAIN, J. Plaintiff, Edward J. Rose, brought suit for personal injuries resulting from an accident which occurred at the John F. Kennedy International Airport on March 30, 1966. His wife, Ruth P. Rose, was initially joined as co-plaintiff seeking consequential damages, but this claim was abandoned during trial. Rose claimed his injury was sustained when he walked into or was struck by an automatic glass door. Joined as defendants were The Port of New York Authority, which leased and operated the airport, The Stanley Works, which had manufactured the door and The Shaw Company, a distributor, which had sold the door to the Port Authority and had attended to its installation.

At the conclusion of the plaintiff's case each of the three defendants moved for an involuntary dismissal pursuant to *R.* 4:37–2(b). Since claims for contribution had been asserted as among the several defendants, the motions were held in abeyance until the close of all the testimony. *R.* 4:37–2(c). Neither the manufacturer nor the seller introduced any evidence; only the Port Authority offered proofs. At the conclusion of all the testimony, the court granted the motions to dismiss as to defendants, The Stanley Works (manufacturer) and The Shaw Company (seller). The judge reserved decision upon the motion of the Port Authority, and as to it allowed the case to go to the jury, which returned a verdict in plaintiff's favor in the amount of $12,000. Shortly thereafter the motion of the Port Authority was denied. It did not move for a new trial.

An appeal to the Appellate Division was taken by the Port Authority from plaintiff's judgment against it and cross-appeals were taken by plaintiff from the orders granting dismissal as to the manufacturer and seller. In an unreported opinion the Appellate Division reversed plaintiff's judgment against the Port Authority upon the ground that the latter's motion for involuntary dismissal should have been granted. It accordingly entered judgment of dismissal against the plaintiff and in favor of the Port Authority. The Appellate

Division also determined that plaintiff's cross-appeals against the manufacturer and the seller had been adandoned, having been neither briefed nor argued. Following the reversal of his judgment by the Appellate Division, plaintiff petitioned this Court for certification, which was granted. 59 *N. J.* 362 (1971).

The facts may be simply stated. Mr. and Mrs. Rose, returning frim a trip to Europe, arrived at Kennedy Airport at about 4:00 P.M. on March 30, 1966. After passing through Immigration and Customs, and as they were preparing to leave the terminal, Mr. Rose recalled that he had shipped a parcel by air freight. Upon inquiry he was informed by a TWA employee that this package was in another building to which he would be taken in a car to be furnished by the airline. He was instructed to leave the terminal by a side exit which gave upon a roadway and there to await the automobile which would pick him up. In so doing he first passed through an automatic glass door, proceeded a short distance along a carpeted runway and continued through a second, similar automatic door. Rose estimated that he waited about ten minutes beside the roadway without the promised car arriving. He then decided to go back into the terminal to make sure he had understood his instructions correctly. In returning he walked toward the door marked "Enter Here." As he came into close proximity with it, he was suddenly struck in the face and fell. A police officer found him crumpled on the mat before the door, dizzy but not unconscious. He was assisted to a first aid station, received medical treatment and then returned to his home in East Orange.

The issue upon which the trial court and the Appellate Division have disagreed is whether the Port Authority's motion, made at the conclusion of the plaintiff's case, should have been granted. "In the case of motions for involuntary dismissal, the test is, . . . whether 'the evidence, together with the legitimate inferences therefrom, could sustain a judgment in * * * favor' of the party opposing the motion,

i. e., if, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied. (citing cases) The point is that the judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." *Dolson v. Anastasia,* 55 *N. J.* 2, 5–6 (1969).

The Appellate Division assayed the evidence adduced by the plaintiff as being inadequate to meet this test in two respects: there was found to be no proof as to any actual malfunctioning of the door nor was there sufficient showing that the injury to the plaintiff was in fact caused by impact with the door. Stated in more abstract terms, it was concluded that there was insufficient evidence upon which to ground either a finding of negligence or of proximate cause.

We summarize plaintiff's proofs with these two points in mind. Mr. Rose testified that upon proceeding toward the terminal, as he approached the door he noticed the bright lights inside the building and "the next thing I knew my head was jarred back and I knew nothing at all after that." He had no "recollection of whether the door opened or closed or failed to open entirely prior to the blow." On cross-examination, however, he recalled distinctly "stepping on the doormat in front of Door No. 19" and then moving ahead toward the first door.

Dr. Arthur Bernstein, the plaintiff's family physician who testified as to the nature of his injuries, was asked whether he had taken a history from Mr. Rose at the time he was consulted following the accident. He replied that he had and that the plaintiff had "said that he had struck his face against the door when he arrived at Kennedy Airport on March the 30th." On cross-examination the following colloquy occurred:

Q  Now, could you repeat to us what the history was that you took down on Mr. Rose on April 4th?

A  Yes. I think I said that he struck his face against the door on arrival at Kennedy. This was the history I took.

Q  He said he struck his face against the door?

A  "Struck face against door on arrival at Kennedy." is what my notes say.

Dr. Jonas J. Lewis, a dentist who treated Mr. Rose over a period of several months for dental problems resulting from the accident, was asked on cross-examination what history he had been given by Mrs. Rose. He replied:

Mr. Rose told me that he had been in an accident at a door glass door, I think he said, weighed about 200 pounds, if I recall properly. He said the glass door some place in the Port Authority as he stepped to go—as he stepped to go in, that the door opened. The door opened and then suddenly closed, he said, and hit him in the face and after that he didn't remember any more.

Plaintiff called to the stand Michael A. Scricca, an employee of The Stanley Works, the company that had manufactured the door and had designed and made the mechanical and electrical system whereby it functioned. Mr. Scricca testified in detail as to the manner of its operation. Briefly, he described three mechanical components which combine to make the door function properly. A carpet extends longitudinally in front of the door. When pressure is applied to the carpet, as by one's stepping upon it, an electrical circuit is closed and a low voltage signal is sent to an "operator" located immediately beneath the door. The "operator," energized by a hydraulic power pack, then causes the door to open. When the power source is interrupted, the door closes of its own weight, assisted by a spring contained in the "operator." The carpet is not visible to the public. It is recessed in the floor and covered by a mat which extends beyond it laterally on either side a distance of several inches.

Mr. Scricca was followed by plaintiff's expert witness, Theodore A. Schneider, a professor of mechanical engineer-

ing at Newark College of Engineering. Professor Schneider concluded that the door was unsafe in several respects: (1) no provision was made to arrest the door from closing in the event of a power failure; (2) the runway or mat leading to the door was too short, so that if initial contact with the mat failed to open the door, a second stride would place the pedestrian at the door too quickly; (3) the mat upon which a user would tread was considerably wider than the activating carpet beneath, thus resulting in "dead" spots along either side of the runway; and (4) there was no bar across the door to invite or facilitate manual operation in case of need. He was not able to say that at the time of the accident there had actually been a power failure or that any other of the suggested defects had in fact occurred or been responsible for the accident.

█ Upon this presentation we think the trial court was correct in denying defendant's motion. Considering first the issue of negligence, although it is true that no specific kind of malfunction was established, we do not think it was necessary for the plaintiff, in order to present a prima facie case, to prove more than he did.

█ Traditionally an allowable inference of negligence on the part of a defendant is justified if (a) the occurrence itself ordinarily bespeaks negligence, (b) the instrumentality was within defendant's exclusive control, and (c) there is no indication that the injury is attributable to plaintiff's voluntary act or neglect. *Kahalili v. Rosecliff Realty, Inc.,* 26 *N. J.* 595, 605–607 (1958); *Bornstein v. Metropolitan Bottling Co.,* 26 *N. J.* 263, 269–273 (1958). Whether we refer to this as the rule of *res ipsa loquitur* or simply say that the circumstances are such as to give rise to an inference that defendant was negligent, is perhaps no great matter. Here the occurrence bespeaks negligence. Members of the public passing through automatic doors, whether in an airport, office building or supermarket do so generally without sustaining injury. What happened to the

plaintiff here is fortunately unusual and not commonplace. It strongly suggests a malfunction which in turn suggests neglect.

In *Wollerman v. Grand Union Stores, Inc.,* 47 *N. J.* 426 (1966) the plaintiff, while shopping in a supermarket, slipped and fell when she trod on a string bean lying on the market floor. Plaintiff's proofs failed to show how the bean reached the floor or how long it had been there. The trial court granted a motion to dismiss at the end of the plaintiff's proofs and this court reversed, remanding the case for a new trial. In the course of his opinion Chief Justice Weintraub noted that the presence of the bean might have resulted from any one of several different possible acts of negligence and that the customer was hardly in a position to determine what particular act of neglect had in fact occurred. He went on to say that where ". . . on the total scene it is fairly probable that the operator is responsible either in creating the hazard or permitting it to arise or to continue, it would be unjust to saddle the plaintiff with the burden of isolating the precise failure. The situation being peculiarly in the defendant's hands, it is fair to call upon the defendant to explain, if he wishes to avoid an inference by the trier of the facts that the fault probably was his." 47 *N. J.* at 430. So here. That the door did not function properly seems highly probable, but it should not be the burden of the plaintiff to come forward with proofs as to the precise nature of the probable malfunction. His expert witness did suggest several things that might have gone wrong; he was hardly in a position to pinpoint the actual operational failure that did occur. Such a task might very likely be insuperable. Under such circumstances it is fair to call upon the defendant for an explanation. See also *Taweel v. Starn's Shoprite Supermarket,* 58 *N. J.* 227 (1971); *Bozza v. Vornado, Inc.,* 42 *N. J.* 355 (1964).

We think, also that the proofs were ample to support a finding that Mr. Rose sustained his injuries from coming in contact with the door. It is true that he was not able

to say definitely whether the door opened or closed. But the testimony is uncontradicted that he reached the runway and proceeded toward the door. The nature of the plaintiff's injuries, according to Dr. Lewis, were precisely consistent with this kind of traumatic experience. There is nothing in the record to suggest that the injury occurred in some other way. Furthermore the testimony of Drs. Bernstein and Lewis detailed above affords strong corroboration of the plaintiff's thesis as to what occurred. Each recounted histories of the occurrence given by Mr. Rose, and this without objection. In fact the greater part of this testimony was elicited by questions asked on cross-examination. Furthermore it is quite impossible to read the whole record of the trial and not be firmly convinced that this point was never in issue but rather was tacitly conceded by defendant. No objection upon this ground, for instance, was made to hypothetical questions asked plaintiff's expert which contained as an assumed fact that the physical impact between plaintiff's face and the door had indeed occurred.

█ Even had there been objection to the testimony of the physicians which recounted the cause of the injury as stated to them by their patient, the evidence might still have been admissible had the physicians indicated that some knowledge of the cause of the injury was relevant to diagnosis or treatment.

A statement is admissible if it was made in good faith and it . . . (c) described to a physician consulted for purposes of treatment the inception, general character of the cause or external source of symptoms, pain or physical sensation where such a description was relevant to diagnosis and treatment. [*Evidence Rule* 63(12)(c)]

See *Cestero v. Ferrara*, 57 *N. J.* 497, 501 (1971); *Bober v. Independent Plating Corp.*, 28 *N. J.* 160, 170–172 (1958); *Barrie v. Central R. R. Co. of N. J.*, 71 *N. J. Super.* 587 (App. Div. 1962), certif. den. 37 *N. J.* 87 (1962); Annot.: "Admissibility of physician's testimony as to patient's statements or declaration, other than *res gestae*, during medical examination," 37 *A. L. R.* 3rd 778 (1971).

██ Respondent took exception to the trial judge's ruling that Professor Schneider was properly qualified as an expert in the area within which he was questioned. In the view of the case taken by the Appellate Division it was not necessary for that court to consider or rule upon this issue. Dean Wigmore strongly espoused the view that a trial judge's decision as to the qualifications of an expert is not the proper subject matter of appellate review. 2 *Wigmore, Evidence* (3rd ed.), § 561, pp. 641–643. He felt the correct rule to be that,

The experiential qualifications of a particular witness are invariably determined by the trial judge, and will not be reviewed on appeal. [2 *Wigmore*, at 643]

In New Jersey we have departed from this rule to the extent that appellate review is sanctioned but the decision of the trial judge will be disturbed only where it is found to be a clear abuse of discretion. *Sanzari v. Rosenfeld,* 34 *N. J.* 128, 136 (1961); *Henningsen v. Bloomfield Motors, Inc.,* 32 *N. J.* 358, 411 (1960); *Carbone v. Warburton,* 11 *N. J.* 418, 424 (1953). Tested by this standard we find no merit in respondent's contention. In some respects the expert's knowledge was incomplete and his experience limited but to allow him to testify was certainly not error. The trial judge, in his charge, correctly instructed the jury as to the weight that should be given expert testimony, taking account of the witness' training, experience, knowledge and ability.

The proofs offered by the Port Authority indicated that the door had been inspected the morning of the accident and again shortly after the accident and upon each occasion was found to be working properly.

Upon these proofs offered by the respective parties the issue went to the jury, resulting, as we have said, in a verdict for the plaintiff.

██ The Appellate Division concluded that the law of New York should govern because the mishap occurred in that state. But we have departed from this traditional con-

flict of laws rule that automatically chooses the law of the place of the wrong, the *lex loci delicti,* and have adopted, as has New York, the more flexible doctrine that applies the law of that jurisdiction having the most significant relationship and closest contacts with the occurrence and the parties. *Pfau v. Trent Aluminum Co.,* 55 *N. J.* 511 (1970); *Mellk v. Sarahson,* 49 *N. J.* 226 (1967); *Babcock v. Jackson,* 12 *N. Y.* 2d 473, 240 N. Y. S. 2d 743, 191 *N. E.* 2d 279, 95 *A. L. R.* 2d 1 (1963); *Restatement* 2d, *Conflict of Laws,* §§ 145, 146. The plaintiff is a resident of New Jersey and the defendant a bi-state governmental agency in which this State has an interest no different than that of New York. Whether the misadventure took place at Kennedy Airport or at Newark Airport would seem of no significance; the situs of the event seems of little moment. While we think, therefore, that New Jersey law governs, we believe the result would have been the same had suit been brought in New York. In *McGuire v. Robison & Smith, Inc.,* 19 *N. Y.* 2d 781, 226 *N. E.* 2d 320 (1967) the Court of Appeals affirmed the Appellate Division of the Supreme Court, 25 *App. Div.* 2d 926, 270 *N. Y. S.* 2d 945 (1966) in sustaining a verdict in favor of a plaintiff who had received an injury from an automatic door. While the facts of that case are not the same as the facts here, we think the New York courts approached the problem in much the same way as we have done.

For the reasons set forth above the judgment of the Appellate Division is reversed and the judgment of the trial court in favor of the plaintiff and against defendant, Port of New York Authority, is reinstated.

Hall, J., concurs in result.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN.—7.

*For affirmance*—None.