353 F.3d 155
 Rose STONE, Plaintiff-Appellant.
v.
COURTYARD MANAGEMENT CORP., s/h/a Courtyard by Marriott, Inc., JEM Architectural, Inc., Bovis Lend Lease LMD, NT Dor-O-Matic New York, Inc., 866 3rd Next Generation LLC and ASR Electrical Contractors, Defendants-Appellees.
 Docket No. 03-7112.
 United States Court of Appeals, Second Circuit.
 Argued: September 17, 2003.
 Decided: December 22, 2003.
 
 Robert M. Ginsberg, Ginsberg & Broome, P.C., New York, NY, for Plaintiff-Appellant Rose Stone.
 Paul F. Clark, Wade Clark Mulcahy, New York, NY, for Defendant-Appellee Courtyard by Marriott, Inc. and 866 3rd Next Generation LLC (David F. Tavella, of counsel, on the brief).
 James Keefe, Montfort, Healy, McGuire, & Salley, Garden City, NY, for Defendant-Appellee NT Dor-O-Matic New York, Inc.
 Suzanne Halbardier, Barry, McTiernan & Moore, New York, NY, for Defendant-Appellee JEM and Bovis Lend Lease LMD (Laurel A. Wedinger, of counsel, on the brief).
 Before: SACK, LEVAL, Circuit Judges, and KORMAN, District Judge.*
 KORMAN, Chief Judge.
 
 
 1
 Rose Stone alleges that she was knocked down in the doorway of a Marriott Hotel, which was located at 866 Third Avenue in Manhattan, when the Hotel's interior automatic doors closed on her while she was entering the Hotel. She appeals from the judgment of the United States District Court for the Southern District of New York granting the motion of the defendants, particularly Courtyard Management Corp., s/h/a Courtyard By Marriot, Inc. (the manager of the Hotel), 866 3rd Next Generation LLC (the owner of the Hotel), and NT Dor-O-Matic New York, Inc. (the company that manufactured and installed the doors, and repaired them when needed), for summary judgment dismissing the negligence complaint she filed against them. She does not appeal from the judgment in favor of the defendants JEM, Bovis Lend Lease LMD, and ASR Electrical Contractors.
 
 
 2
 We pass over the procedural path that led to the grant of the motion for summary judgment. Instead, we focus on the basis for the district judge's ruling. Specifically, she held (1) that there was insufficient evidence to establish a prima facie case of negligence against the defendants without resort to the inference of negligence supplied by the doctrine of res ipsa loquitur, and (2) that the evidence was insufficient to establish the exclusive control necessary to invoke that inference.
 
 
 3
 In New York, a case may be committed to the jury on the theory of res ipsa loquitur only if the plaintiff demonstrates that (1) the event was of a kind which does not ordinarily occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it was not due to any voluntary action or contribution on the part of plaintiff. Corcoran v. Banner Super Market, Inc., 19 N.Y.2d 425, 430, 280 N.Y.S.2d 385, 227 N.E.2d 304 (1967).
 
 
 4
 In explaining the basis for her conclusion that the element of exclusive control had not been met against 866 3rd Next Generation Hotel, LLC, and Courtyard Management Corp., the district judge wrote: "Because Dor-O-Matic performed maintenance and repair service upon the doors from time to time [the owner and manager of Marriott] cannot be held to have had exclusive control of the doors." Moreover, she continued, plaintiff "proffered no evidence to exclude the possibility that the operation of the automatic doors could have been affected adversely by the many persons passing in and out of the entrance to the Hotel every day."
 
 
 5
 Under New York law, neither of the grounds relied upon by the district judge could justify the rejection of the inference of negligence permitted by the doctrine of res ipsa loquitur. Consequently, we reverse the order granting summary judgment to 866 3rd Next Generation Hotel, LLC, and Courtyard Management Corp. (hereafter collectively "Marriott"), and NT Dor-O-Matic New York, Inc. (hereafter "Dor-O-Matic"), the entity which manufactured, installed, and repaired the automatic doors (from time to time).
 
 
 6
 We turn first to the failure of plaintiff to proffer any "evidence to exclude the possibility that the operation of the automatic doors could have been affected adversely by the many persons passing in and out of the entrance of the Hotel every day." The district judge applied the wrong standard. It was not necessary for the plaintiff to altogether eliminate the possibility of other causes of the injury-causing malfunction, but "only that their likelihood must be so reduced that the greater probability lies at defendant's door." Dermatossian v. New York City Transit Auth., 67 N.Y.2d 219, 227, 501 N.Y.S.2d 784, 492 N.E.2d 1200 (1986) (quoting 2 Harper and James, Torts § 19.7, at 1086). Plaintiff claimed that the mechanisms that would have necessarily failed, if the accident occurred as alleged, were the control box, the motor that operated the door, the motion detector, or the presence sensor. The district judge appeared to accept for the purposes of her opinion that each of these mechanisms was inaccessible to members of the public. Our view of the record here persuades us that, as between Marriott and the many persons passing in and out of the entrance to the Hotel every day without access to these mechanisms, "the greater probability [of responsibility for the alleged malfunction] lies at defendant's door." Id. The reason is that, as the Appellate Division has observed, "[t]he appropriate target of inquiry is whether the broken component itself was generally handled by the public, not whether the public used the larger object to which the defective piece was attached." Pavon v. Rudin, 254 A.D.2d 143, 146, 679 N.Y.S.2d 27 (N.Y.App.Div. 1998).
 
 
 7
 This case is distinguishable from Dermatossian v. New York City Transit Authority, 67 N.Y.2d 219, 227, 501 N.Y.S.2d 784, 492 N.E.2d 1200 (1986), upon which the district judge relied. The plaintiff there was injured when he struck his head on a defective grab handle as he stood up to get off a bus operated by the defendant. "The grab handle, according to plaintiff, projected straight down from the ceiling of the bus instead of at the customary angle of about 45 degrees." 67 N.Y.2d at 221 n. 2, 501 N.Y.S.2d 784, 492 N.E.2d 1200. In holding that plaintiff had failed to establish the exclusive control of the grab handle by the defendant so as "to fairly rule out the chance that the defect in the handle was caused by some agency other than defendant's negligence," the Court of Appeals wrote that "[t]he proof did not adequately exclude the chance that the handle had been damaged by one or more of defendant's passengers who were invited to use it." Id. at 228, 501 N.Y.S.2d 784, 492 N.E.2d 1200 (emphases added). The "crucial fact" was that the handle was "continuously available for use by the defendant's passengers." Id. Unlike the grab handle, which the public was invited to use, the public did not "generally handle" the motor, micro-processor, sensors, or control box at issue in this case, each of which was either embedded in doorframes or otherwise out of the public's normal reach as they passed through the open doors. These circumstances fairly and adequately exclude the chance that a person passing through the entrance caused the damage so as to lay greater probability for the malfunction at Marriott's door.
 
 
 8
 At oral argument, Marriott claimed that the mechanism for one or both of the safety beams was in fact accessible to the public. It relied on a report by a Dor-O-Matic expert that described the doors as follows:
 
 
 9
 The automatic doors installed at Marriott Courtyard are a pair of Astro-Slide-bi-parting outside slide doors with a door opening of 6' wide by 8' high. The doors are operated by a D.C. torque motor controlled by a micro processor-type control. The sensing and safety devices consist of 2 two-way motion detectors, one on each side of the header or transom bar containing the operating mechanism. They are microwave motion detectors. There are two safety beams consisting of two infrared transmitters and two infrared receivers mounted in the styles [sic] of the fixed panels at 22" high and 54" high. An active infrared presence sensor is mounted on the underside of the header projecting down covering the door opening on each side of the sliding door path and the full width of door opening on each side of the sliding door path and the full width of door opening. There is a time delay setting which is adjustable in the control box that allows the doors to stay open after a person has exited the detection zones. (emphasis added).
 
 
 10
 Marriott argued that the public could "jostle the doors" or "bang the doors," thereby causing a failure in one or both of the safety beams that are mounted in the stiles. A stile is "one of the vertical members in a frame or panel into which secondary members are fitted." Merriam-Webster's Collegiate Dictionary (10th ed.1996). We assume from the description above that the mechanism for the safety beams was fitted into the door frames. The evidence suggests no reasonable likelihood that the safety beams were damaged in the manner Marriott posits. Nor does this possibility affect our conclusion that, as between Marriott and the members of the public passing through the doors, Marriott was in exclusive control of them.
 
 
 11
 We turn next to the district judge's holding that, "[b]ecause Dor-O-Matic performed maintenance and repair service upon the doors from time to time [Marriott] cannot be held to have had exclusive control of the doors." Under New York law, "[i]t is not necessary for the application of the res ipsa loquitur doctrine that there be but a single person in control of that which caused the damage." Schroeder v. City and County Sav. Bank of Albany, 293 N.Y. 370, 374, 57 N.E.2d 57 (1944). This is because exclusive control is not a rigid concept; rather, it is "subordinated to its general purpose, that of indicating that it probably was the defendant's negligence which caused the accident." Corcoran, 19 N.Y.2d at 432, 280 N.Y.S.2d 385, 227 N.E.2d 304; cf. De Witt Properties, Inc. v. City of New York, 44 N.Y.2d 417, 427, 406 N.Y.S.2d 16, 377 N.E.2d 461 (1978) (finding exclusive control element not satisfied against one defendant where "the evidence indicates that it was more likely" that another defendant was solely responsible for the injury). In Schroeder, the doctrine of res ipsa loquitur was applied to three defendants, the owner of a building and two construction companies working on the building, who were sued for an injury resulting when a street barricade they had erected collapsed and injured plaintiff. The Court of Appeals held that res ipsa loquitur was appropriate against each defendant because "[t]he three defendants either simultaneously or in necessary rotation, with nondelegable supervision always remaining in the Bank, were in possession of the instrumentality which caused the injuries to plaintiff." Schroeder, 293 N.Y. at 374, 57 N.E.2d 57. Likewise in Corcoran, the object that caused plaintiff's injuries (a falling board) had been resting partially in defendant's property and partially in the property of another before it fell. The Court of Appeals found that both property owners had a duty with respect to the board, and that "[t]his shared or dual duty with respect to the board permit[ted] the application of res ipsa loquitur against either or both owners." Corcoran, 19 N.Y.2d at 432-33, 280 N.Y.S.2d 385, 227 N.E.2d 304.
 
 
 12
 Marriott, as owner and manager of the Hotel, had a duty to maintain the Hotel and its doors "in such a condition that with ordinary use they would be reasonably safe." Jungjohann v. Hotel Buffalo, 5 A.D.2d 496, 498, 173 N.Y.S.2d 340 (N.Y.App.Div.1958) (quoting Kane v. Ten Eyck Co., Inc., 10 Misc.2d 398, 399, 175 N.Y.S.2d 88 (Sup.Ct. Albany Co.1943), aff'd, 267 A.D. 789, 46 N.Y.S.2d 251 (N.Y.App.Div.1943), aff'd, 292 N.Y. 701, 56 N.E.2d 115 (1944)). Dor-O-Matic, by performing maintenance and repairing the automatic doors when called, "assumed a duty to exercise reasonable care to prevent foreseeable harm to the plaintiff." Eaves Brooks Costume Co., Inc. v. Y.B.H. Realty Corp., 76 N.Y.2d 220, 226, 557 N.Y.S.2d 286, 556 N.E.2d 1093 (1990). The fact that Dor-O-Matic occasionally performed maintenance and repair service on the doors did not free Marriott from its duty to maintain the doors and did not remove the doors from Marriott's exclusive control. As the Court of Appeals said in Schroeder, "[w]here, as here, one or some or all of [multiple] interdependent defendants are in control and burdened with supervision of [an injury-causing device], it is for them to explain their action and conduct when it [malfunctions] with resultant damage to another." 293 N.Y. at 374, 57 N.E.2d 57. Marriott and Dor-O-Matic were both "burdened with supervision" of the automatic doors and a res ipsa loquitur inference could have been drawn against either or both. See Mallor v. Wolk Properties, Inc., 63 Misc.2d 187, 191, 311 N.Y.S.2d 141 (Sup.Ct.N.Y.Co.1969) ("Where the defect causing the accident is obviously in the mechanical or motor or safety apparatus of an elevator, the circumstances are such that an inference of negligence should be warranted against both owner and the maintenance company, in the absence of explanation."); see also Smith v. Jay Apartments, Inc., 33 A.D.2d 624, 304 N.Y.S.2d 737 (N.Y.App.Div.1969) (allowing res ipsa loquitur inference against both owner of building and elevator company).
 
 
 13
 Only if Dor-O-Matic had an exclusive maintenance contract under which Marriott stopped caring for the doors entirely could Marriott argue that it was without exclusive control. See Weeden v. Armor Elevator Co., Inc., 97 A.D.2d 197, 468 N.Y.S.2d 898 (N.Y.App.Div.1983) (suggesting that only the elevator maintenance company had exclusive control of a failing elevator when the building owner, through a contract, relied exclusively upon maintenance company "to locate and remedy any defects"). If there were an exclusive contract, Marriott could argue that its negligence was not a probable cause of the alleged malfunction and that a finding that Marriott had exclusive control would be improper. Under the arrangement here, however, Dor-O-Matic did not have a service contract that required it to inspect or maintain the automatic doors. Instead, Dor-O-Matic provided maintenance and repairs upon Marriott's request, while Marriott was burdened with monitoring the doors and ensuring that they were repaired if problems arose. Thus, if we accept a that negligent malfunction caused plaintiff's injuries, it was probably the negligence of either Dor-O-Matic or Marriott. It is impossible for the plaintiff to say which of these two defendants was at fault in this case (if either), but that is precisely why New York law allows plaintiff to employ the res ipsa loquitur inference against each defendant and let them explain what happened.
 
 
 14
 Marriott argues, as an alternative basis for affirmance, that the doors may have malfunctioned and this accident may have taken place even in the absence of negligence. This argument concerns the first element that must be met for res ipsa loquitur to apply and was not the basis for the ruling below. Relying on case law representing what can fairly be described as a minority position, see Jay M. Zitter, Annotation, Liability of Owner or Operator of Business Premises for Injuries from Electrically Operated Door, 44 A.L.R. 5th 525, § 3(c)-(d) (1996), Marriott directs us to an opinion by the Supreme Court of Alabama that found it not "to be common knowledge that automatic doors cannot malfunction unless the premises owner is negligent." Kmart Corp. v. Bassett, 769 So.2d 282, 287 (Ala.2000). Marriott does not provide any evidence that the malfunctioning of automatic doors is not generally due to the failure to properly inspect and maintain them. More to the point, in a case which we recently cited with approval, Rose v. Port of New York Authority, 61 N.J. 129, 293 A.2d 371 (1972), the Supreme Court of New Jersey held that: "Members of the public passing through automatic doors, whether in an airport, office building or supermarket do so generally without sustaining injury." Id. at 375; see Chylinski v. Wal-Mart Stores, Inc., 150 F.3d 214, 217 (2d Cir.1998) (citing Rose). An injury "suggests a malfunction which in turn suggests neglect." Rose, 293 A.2d at 375. If the injury was not the result of a malfunction attributable to negligence, Marriott is free to offer evidence to that effect at trial. But as the Supreme Court of New Jersey held in Rose: "The situation being peculiarly in the defendant's hands, it is fair to call upon the defendant to explain, if he wishes to avoid an inference by the trier of the facts that the fault was probably his." Id. (citation omitted); see also Griffen v. Manice, 166 N.Y. 188, 194, 59 N.E. 925 (1901) (the doctrine of res ipsa loquitur is based, in part, upon the fact that it is within the power of the defendant "to produce evidence of the actual cause that produced the accident, which the plaintiff is unable to present.").
 
 
 15
 We note that the parties, including the defendants, treat 866 3rd Next Generation Hotel, LLC, the owner of the Marriott, and Courtyard Management Corp., s/h/a Courtyard By Marriott, Inc., the manager of the Marriott, as if they were one entity. The nature of the corporate or contractual relationship between the two is not before us and we are unable to determine whether it justifies distinguishing the two in determining whether the exclusive control element has been satisfied. See Slater v. Barnes, 241 N.Y. 284, 149 N.E. 859 (1925) (finding that a building owner who had leased an apartment to a tenant was not in exclusive control of the ceilings in the apartment, because "[h]e was not in possession of the premises or at a post of observation"). We do not intend to preclude the district judge from revisiting this issue on remand.
 
 
 16
 We have considered the remaining arguments raised by plaintiff in support of reversal and find them to be without merit.
 
 
 17
 The judgment of the district court is vacated for the reasons stated above solely to the extent that it granted summary judgment to 866 3rd Next Generation LLC, Courtyard Management Corp., s/h/a Courtyard By Marriot, Inc. and NT Dor-O-Matic New York, Inc., and the case is remanded to the district court for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 *
 The Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation