Anthony **BALISTRERI**, individually, and as Special Administrator of the Estate of Elizabeth Balistreri, Plaintiffs,

and

Meridian Resource Company, LLC, f/k/a Meridian Resource Corporation, Physicians Mutual Insurance Company and Tommy Thompson, Secretary of Department of Health & Human Services, HIC # 395203673A, Involuntary Plaintiffs,

v.

THE RICHARD E. JACOBS GROUP, INC., Defendant.

No. 02–C–0967.

United States District Court, E.D. Wisconsin.

June 14, 2004.

Thomas A. Cabush, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Anthony Balistreri ("Anthony"), on his own behalf and as administrator of the estate of his deceased spouse, Elizabeth Balistreri ("Elizabeth"), brings this diversity action against defendant, The Richard E. Jacobs Group, Inc., alleging that defendant was negligent in maintaining automatic sliding doors, one of which struck and injured Elizabeth. Defendant now moves for summary judgment.

### I. FACTS

On November 6, 2000, Anthony and Elizabeth entered the Brookfield Square Shopping Center in Brookfield, Wisconsin, through the food court entrance. At such entrance are two pairs of automatic sliding doors, an inner and outer set. Anthony states that he went through both sets of doors and then heard a loud noise followed by his wife's scream. He states that he observed Elizabeth standing in the space between the inner doors being hit repeatedly by the left door. He states that a security guard called out "Shut the power off!" and "Hurry up!" (Robinson Aff., Ex. B at 10), after which the power went off and Elizabeth fell to the ground. A mall security officer states that he observed Elizabeth laying near the left inner door in a hysterical state. As the result of being struck by the door, Elizabeth suffered serious injuries.

The doors in question, Stanley Dura–Glide 2000 ("Stanley") doors, were installed in 1996 by Automatic Entrances of Wisconsin, Inc. ("Entrances"), a company certified by the American Association of Automatic Door Manufacturers ("AAADM"). The doors operate through

Edward E. Robinson, Chicago, IL, for Plaintiffs.

the use of sensors. When a person approaches, a motion sensor detects the approach and causes the doors to open. The motion sensor then sends a signal that activates a threshold sensor, which is designed to keep the doors open when the person is near. The doors are also equipped with a safety beam that emits an infrared beam across the plane of the doors and keeps the doors open if a person or object breaks such plane. After a person clears the area of the door, a signal is sent directing the doors to close.

The Stanley owner's manual directs owners how to ensure that the sensors are properly adjusted so as to prevent the doors from closing on a person. It advises owners that an improperly adjusted door can cause injury, and that owners should perform daily safety checks on the doors. The manual directs owners how to perform safety checks and how to maintain the doors. It recommends that the doors should be inspected twice a year by a certified door repair company to make sure that the sensors are adjusted properly, AAADM also recommends that door owners perform daily safety checks and have their doors inspected at least annually by AAADM certified inspectors.

When the doors were installed at Brookfield Square, the owner's manual was furnished to mall maintenance director Dale Moore, who reviewed it with mall manager Scott Oleson, and Moore and Oleson received about ten to fifteen minutes of instruction regarding operation of the doors. The manual was then placed in a binder on a shelf in Moore's office, and neither Moore nor Oleson reviewed it again prior to Elizabeth's accident. Moore states that he tried to conduct a safety check twice a week but that the duty of conducting daily safety checks was assigned to the mall security department, to be performed when the doors were turned on in the morning. Security officers, however, received no training regarding how to perform such checks. Further, in the approximately four years between the date the doors were installed and the date of the accident, the doors were not inspected by an outside company.

On September 3, 1999, Entrances notified Moore that the warranty on the doors would soon expire and proposed an agreement under which it would maintain the doors:

> Mechanical devices, regardless of type, require periodic attention in order to maintain proper and efficient operators. This is true even if you have not experienced much service during the warranty period. By inspecting the automatic door equipment twice a year, even if there are no apparent problems, we are able to catch some hidden problems and adjustments before they become major expenses.
>
> In the case of your automatic door equipment the added factors of maintaining a safe and expedient method of ingress and egress for your customers and employees remains extremely important.

(*Id.*, Ex. N.) Defendant declined Entrances' proposal.

Additional facts will be stated in the course of the decision.

## II. APPLICABLE LAW

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

courts should act with caution in granting summary judgment, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and may grant the motion only when no reasonable jury could find in the non-movant's favor. *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir.1989).

▮ The parties agree that Wisconsin substantive law applies to the issues in dispute. Under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), I apply the law as declared by Wisconsin's highest court. If the state supreme court has not addressed the issue before me, my task is to predict how that court would decide the question. *Rodman Indus., Inc. v. G & S Mill, Inc.,* 145 F.3d 940 (7th Cir.1998). Absent guidance from any Wisconsin court, I may look to other jurisdictions to predict how the Supreme Court of Wisconsin would decide the issue. *King v. Damiron Corp.,* 113 F.3d 93, 95 (7th Cir.1997).

▮ The present case raises issues of negligence law. Under Wisconsin law, to establish negligence a plaintiff must demonstrate that the defendant owed her a duty of care, that it breached such duty, that the breach caused injury to the plaintiff and that damages resulted from the injury. *Hammann v. United States,* 24 F.3d 976, 979 (7th Cir.1994). However, when a person is injured in a place of employment or a public building, Wis. Stat. § 101.11, the safe place statute, establishes a standard of care that replaces the common law standard, *Am. Exch. Bank v. United States,* 257 F.2d 938, 940 (7th Cir. 1958), and is more stringent than the common law standard. *Hrabak v. Madison Gas & Elec. Co.,* 240 F.2d 472, 475 (7th Cir.1957).[1] Under the safe place statute, such places are to be kept "as safe as the nature of the premises reasonably permits." *Strack v. Great Atl. & Pac. Tea Co.,* 35 Wis.2d 51, 54, 150 N.W.2d 361 (1967).

▮ Further, under Wisconsin law, when certain conditions are satisfied, a plaintiff may establish negligence or a violation of the safe place standard through the doctrine of res ipsa loquitur ("res ipsa"), a rule of circumstantial evidence that permits a fact-finder to infer a defendant's negligence from the occurrence of an event. *Lambrecht v. Estate of Kaczmarczyk,* 241 Wis.2d 804, 819, 623 N.W.2d 751 (2001). A jury may infer negligence if the event is one that does not occur ordinarily in the absence of negligence and the instrumentality causing the harm is within the exclusive control of the defendant. *Id.* at 820, 623 N.W.2d 751. Where such conditions are present, a jury may infer negligence without proof of the exact cause of the accident or proof that the defendant had notice of the defect precipitating the harm. *Ziino v. Milwaukee Ry. & Transp. Co.,* 272 Wis. 21, 23–24, 74 N.W.2d 791 (1956). The question of whether a plaintiff has satisfied the conditions required to invoke res ipsa is one of law for the court. *Lambrecht,* 241 Wis.2d at 817, 623 N.W.2d 751. Finally, if res ipsa applies, it enables a plaintiff to survive a summary judgment motion unless the defendant presents evidence sufficient to destroy any reasonable inference of negligence. *Id.*

---

1. It is undisputed that the safe place statute applies to the Brookfield Square Shopping Center.

978

## III. DISCUSSION

 In the present case, plaintiff satisfies the conditions necessary to invoke the res ipsa doctrine. First, automatic sliding doors do not ordinarily close on a person in the absence of negligence. *See Ziino*, 272 Wis. at 23, 74 N.W.2d 791 (stating that "[h]ere we have the kind of accident which ordinarily does not occur in the absence of negligence on the part of someone; it was caused by the failure of the automatic device installed to open and close the door"); *see also Brewster v. United States*, 542 N.W.2d 524, 532 (Iowa 1996) (concluding that "an automatic door malfunction does not occur in the absence of negligence"); *Brown v. Scrivner, Inc.*, 241 Neb. 286, 488 N.W.2d 17, 19 (1992) (stating that "[a]utomatic doors do not, in the ordinary course of things, cause injury to those who pass through them"). Defendant cites *Dahl v. K–Mart*, 46 Wis.2d 605, 611, 176 N.W.2d 342 (1970), which stated that the plaintiff, there, could have been hit by the door at issue in the absence of negligence. However, *Dahl* is distinguishable from the present case because the door in question was an exit door, which plaintiff attempted to use to enter a store, and because the jury found that the door did not malfunction.

The second precondition for the application of res ipsa, that the instrumentality causing harm be within the exclusive control of the defendant, is also satisfied. Defendant does not dispute that, at all relevant times, the doors were under its control.

Thus, in the present case, in attempting to establish a safe place violation, plaintiffs may invoke the res ipsa doctrine. This conclusion is consistent with those reached in most other jurisdictions. *See, e.g., Stone v. Courtyard Mgmt. Corp.*, 353 F.3d 155 (2d Cir.2003) (holding that under New York law res ipsa was applicable where an automatic door in a hotel closed on a guest); *Tarara v. Dayton Hudson Corp.*, 36 Mass.App.Ct. 942, 629 N.E.2d 1352 (1994) (holding that doctrine was applicable under Massachusetts law where a customer was injured by a grocery store's automatic door); *Trefney v. Nat'l Super Markets, Inc.*, 803 S.W.2d 119 (Mo.App. 1990) (holding that under Missouri law doctrine applied where customer was injured by store's automatic door); *Landmark Hotel & Casino, Inc. v. Moore*, 104 Nev. 297, 757 P.2d 361 (1988) (holding that under Nevada law, res ipsa applied where a person was injured by a hotel's automatic sliding doors); *Rose v. Port of N.Y. Auth.*, 61 N.J. 129, 293 A.2d 371 (N.J.1972) (holding that res ipsa was applicable under New Jersey law where a person was injured by an automatic door in an airport); *McDonald v. Aliquippa Hosp.*, 414 Pa.Super. 317, 606 A.2d 1218 (1992) (holding that under Pennsylvania law, the doctrine was applicable where a patient was injured by a hospital's automatic doors).

 Defendant argues that, notwithstanding the applicability of res ipsa, there is sufficient evidence in the record to overcome any reasonable inference of negligence. First, defendant contends that the fact that the doors did not close on anyone during the four hours that they were open on November 6, 2000, before Elizabeth was injured, is evidence that it was not negligent. However, plaintiffs present evidence that if a safety check had been performed when the doors were turned on, it might have identified problems that normal pedestrian traffic would not disclose. Defendant also argues that the failure of plaintiffs' expert to discover defects in the doors during his September 12, 2002 inspection is evidence that the doors were not defective on the date of the accident. However, plaintiffs present testimony suggesting that automatic doors could function incorrectly on one occasion

but not necessarily do so thereafter. Defendant also suggests that Elizabeth may have injured herself by walking into the door. However, plaintiffs present evidence that, with properly functioning threshold sensors, the doors would not close on a person in the threshold of the doorway no matter how the person arrived there.

Thus, while defendant presents evidence from which a reasonable jury could infer that it was not negligent, such evidence is not sufficient to warrant a grant of summary judgment. As indicated, in evaluating a summary judgment motion, I must draw all inferences in plaintiffs' favor and grant the motion only if no reasonable jury could find for plaintiffs. Based on the present record, I cannot reach such a conclusion. Under res ipsa, a jury could reasonably infer negligence based on the occurrence of the event that caused Elizabeth's injury. The evidence in defendant's favor is insufficient to justify not permitting the jury to decide whether to draw such inference.

■ However, even if res ipsa is not applicable, plaintiffs have presented sufficient evidence to survive defendant's summary judgment motion. Based on the evidence in the record, a reasonable jury could conclude that defendant failed to take adequate precautions to maintain the door in a safe condition, and that such failure was the cause of the accident. Taking the facts in the light most favorable to plaintiffs, a reasonable jury could find that defendant was negligent by failing to inspect the doors on a regular basis, or have an outside inspector do so, failing to train its employees to conduct safety checks, and/or failing to ensure that regular safety checks were performed. A reasonable jury could also conclude that such failures caused the doors to malfunction. There is, for example, evidence in the record indicating that if on the morning of the acci-

dent a daily safety check had been performed as directed in the owner's manual such check would have revealed that the sensors were not properly functioning. Plaintiffs also present evidence that, if not regularly maintained, the various safety sensors on the doors could malfunction by "drift[ing] out" of adjustment. (Robinson Aff., Ex. G at 55.)

■ In order to survive summary judgment in the absence of res ipsa, plaintiff must present facts sufficient to permit a reasonable jury to determine that defendant had actual or constructive notice that the door might malfunction. *See Fitzgerald v. Badger State Mut. Cas. Co.*, 67 Wis.2d 321, 326, 227 N.W.2d 444 (1975) (stating that in order to establish liability under the safe place law, a plaintiff must show that the defendant had notice of the defect in question). In the present case, defendant did not have actual notice, and defendant argues that it did not have constructive notice either. However, where a premises owner fails to make adequate periodic inspections of safety mechanisms to determine whether they are functioning property, such owner may reasonably be found to have had constructive notice of a defect that such inspections might have revealed. *See Karis v. Kroger Co.*, 26 Wis.2d 277, 284–85, 132 N.W.2d 595 (1965). In *Karis*, as in the present case, the plaintiff was injured by a malfunctioning automatic door. Concerning constructive notice, the court stated:

> In the instant case ... we are concerned with a safety mechanism which got out of order and failed to function. We have no hesitancy in holding that, in a situation where there is a place of employment to which the safe-place statute applies, a duty is placed upon the employer to make timely and adequate periodic inspections of any safety devices to ascertain whether they are properly functioning. This duty under sec. 101.06,

Stats., of course inures to the benefit of frequenters as well as employees. The record here clearly establishes that Kroger failed in this duty. According to its practice, Kroger made an inadequate inspection on the morning of the accident. Under such circumstances we do not consider it is permitting a jury to indulge in unwarrantable speculation in concluding that, if Kroger had made an adequate inspection that morning, it would have discovered the defect. Thus the finding of negligence against Kroger can be sustained on the theory of constructive notice.

*Id.* at 284–85, 132 N.W.2d 595.

The case of *Force v. Richland Mem'l Hosp.*, 322 S.C. 283, 471 S.E.2d 714, 715–16 (1996), where a hospital worker was injured when the hospital's automatic sliding doors closed on her, is also instructive. The court rejected the hospital's argument that the plaintiff was required to establish notice by proving that there had been previous problems with the doors, noting that the hospital had failed to perform daily safety checks on the doors, failed to train its employees to perform such checks and declined the maintenance package offered by the door installation company:

> Here the hospital undertook a duty to keep the doors safe by maintaining and inspecting them. It received guidance from the manufacturer and the installer concerning the level of maintenance necessary to keep the doors in safe working order. It clearly had notice the doors would become unsafe absent frequent maintenance and inspection. Furthermore, the hospital should have foreseen that inadequate inspection could result in a failure to detect a malfunctioning door, thus potentially causing an accident like [plaintiff's].

*Id.* at 715–16.

■ Thus, where a person is injured by an automatic door, he or she can estab-lish constructive notice by showing that the defendant failed to regularly and adequately make recommended safety inspections of the door. As discussed, in the present case, plaintiffs present such evidence. A reasonable jury could find that defendant failed to inspect the doors, failed to perform regular safety checks, and failed to accept a reasonable maintenance proposal after having been warned that such failure could cause the doors to malfunction. The Stanley owners manual and the AAADM made clear that the doors functioned through a mechanism that, in the absence of regular inspections and maintenance, could cause them to become unsafe.

■ Defendant cites a number of slip and fall cases in support of its argument that in order to establish constructive notice plaintiffs must prove that the alleged defect existed for a certain length of time prior to the accident. *See, e.g., Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 267 Wis.2d 800, 812, 672 N.W.2d 105 (Ct.App.2003), *petition for review granted by*, 673 N.W.2d 691(2003). However, unlike slip and falls, automatic door cases involve complex mechanisms, and it is reasonable to treat owners of such mechanisms who fail to take the steps required to keep them safe as having notice that the doors could cause injury. In *Strack*, 35 Wis.2d at 57–58, 150 N.W.2d 361, the Wisconsin Supreme Court enunciated a principle that seems clearly to apply to automatic door cases.

> [I]n circumstances where there is a reasonable probability that an unsafe condition will occur because of the nature of the business and the manner in which it is conducted, then constructive knowledge of the existence of such an unsafe condition may be charged to the operator and such constructive notice does not depend upon proof of an extended peri-

od of time within which a shop owner might have received knowledge of the condition in fact.

*Id.; see also Steinhorst v. H.C. Prange Co.,* 48 Wis.2d 679, 180 N.W.2d 525 (1970) (applying *Strack* principle where department store patron slipped due to shaving foam on the floor at a self-serve men's cosmetics counter). Although recent state court of appeals decisions have limited *Strack*'s application in the slip and fall context, the policy underlying it is similar to that expressed in *Karis.* Thus, where a premises owner is on notice that operating a complex mechanism such as automatic doors without carrying out recommended safety procedures and inspections is likely to make the premises unsafe, a plaintiff may establish constructive notice without proving that the resulting hazard existed for a certain length of time.

Therefore, for the foregoing reasons, even if res ipsa is inapplicable, defendant's motion for summary judgment must be denied.

## IV. CONCLUSION

For the reasons stated,

**IT IS THEREFORE ORDERED** that defendant Richard E. Jacobs Group's motion for summary judgment is **DENIED**.