883 A.2d 350

TERRY JERISTA AND MICHAEL JERISTA, HER HUSBAND, PLAINTIFFS–APPELLANTS, v. THOMAS M. MURRAY, JR., ESQ., AN ATTORNEY AT LAW OF THE STATE OF NEW JERSEY, DEFENDANT–RESPONDENT.

Argued January 3, 2005—Decided October 12, 2005.

176

*Jack L. Wolff,* argued the cause for appellants.

*Mark M. Tallmadge,* argued the cause for respondent (*Bressler, Amery & Ross,* attorneys; *Mr. Tallmadge* and *Diana C. Manning,* on the brief).

*Edwin J. McCreedy,* President, argued the cause for *amicus curiae,* New Jersey State Bar Association (*Mr. McCreedy,* attorney; *Evelyn R. Storch,* on the brief).

Justice ALBIN delivered the opinion of the Court.

This case concerns the application of the doctrine of *res ipsa loquitur* when a supermarket's automatic door unexpectedly closes on and injures a customer. The central issue is whether *res ipsa loquitur* permits a jury to infer, based on common knowledge, that automatic doors ordinarily do not malfunction unless negligently maintained by the store owner or whether the *res ipsa* inference is preconditioned on expert testimony first explaining the door's mechanics.

The issue arises in a malpractice action against an attorney, who represented the injured customer and her husband in a negligence lawsuit against the supermarket. The attorney allegedly failed to

respond to discovery requests, leading to dismissal of the complaint. Over the course of nine years, he then concealed from his clients the complaint's dismissal, resulting in the loss of evidence necessary to prosecute the malpractice claim against him. Plaintiffs in the malpractice action contend that but for the attorney's derelictions, they had a strong negligence case against the supermarket based on the *res ipsa* doctrine.

The attorney charged with malpractice moved for summary judgment, claiming that his former clients failed to present expert testimony explaining what went wrong with the supermarket's automatic door and therefore were not entitled to the *res ipsa* inference. The attorney argues that without the *res ipsa* inference, plaintiffs could not make out a *prima facie* case that the supermarket's negligence was the proximate cause of their damages. It follows from that argument that the lawyer caused his clients no harm because the clients had no provable claim in the underlying suit.

Plaintiffs, however, respond by asserting that they did not need an expert to survive the attorney's summary judgment motion because the *res ipsa* inference was triggered by common knowledge that automatic doors, unless negligently maintained, do not and should not generally close on customers causing injury. By that logic, the attorney's default resulted in plaintiffs losing a sustainable claim against the supermarket.

In granting summary judgment for the attorney, the trial court ruled that the automatic door was a complex instrumentality, requiring expert testimony before *res ipsa loquitur* could be invoked. The Appellate Division affirmed. We now reverse.

## I.

### A.

The facts underlying this attorney malpractice action stem from an accident dating back almost twenty years.[1] In August

---

[1] Because the trial court granted and the Appellate Division affirmed defendant attorney's motion for summary judgment, we review the facts in the light

1987, plaintiff Terry Jerista and her husband plaintiff Michael Jerista went food shopping at a Shop Rite supermarket in Hasbrouck Heights. Mr. Jerista pushed their three-year-old child in a shopping cart through the supermarket's automatic door, which swung into the store. As Mrs. Jerista began to enter, closely behind her husband, the automatic door suddenly swung backwards, striking her right side and briefly pinning her body, causing significant injuries.

That same day, Shop Rite completed an incident report, indicating that the "automatic (in) door closed on [Mrs. Jerista's] right wrist" and that she had pain and some redness in her wrist. Mrs. Jerista sought medical attention the next day at Holy Name Hospital Emergency Room, where she was treated for a contusion to her right wrist and for cervical (neck) strain. In September, a CT scan of her cervical spine was "remarkable" for a "central disc bulge." Over the course of a year, Mrs. Jerista consulted with two neurologists and an orthopedist. During that period, she also received physical therapy treatments. In 1996, Mrs. Jerista underwent surgeries to address disc-related problems. Dr. Michael Wujciak, plaintiffs' expert in the malpractice action, rendered an opinion that Mrs. Jerista had "sustained significant partial whole body permanent impairment consequent to the [Shop Rite accident]." Dr. Wujciak diagnosed the impairment as a "significant anatomical disc disruption and secondary radiculitis/radiculopathy in both the cervical and lumbar [lower back] spines." He also noted that she had "sustained a significant contusion and secondary soft tissue injury to the hand, wrist and forearm of the right upper extremity."

---

most favorable to the non-moving parties, i.e., plaintiffs. *R.* 4:46–2(c); *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 A.2d 146 (1995). We note that defendant has given an entirely different version of events concerning his involvement with plaintiffs from the one recounted here. Defendant's version, however, is not germane for the purpose of our deciding whether summary judgment was properly granted. We do not express any opinion concerning the truth of plaintiffs' account.

B.

Around 1980, plaintiffs began a longstanding professional relationship with defendant Thomas M. Murray, Jr., Esq., who over time became their family attorney. In the seven years before the Shop Rite incident, defendant represented plaintiffs in matters as varied as a municipal court case, the management of real estate, a personal injury action, and a will contest. Mrs. Jerista contacted defendant within forty-eight hours of the supermarket accident, and one year later plaintiffs retained defendant to pursue a personal injury lawsuit.

In April 1989, defendant filed on behalf of plaintiffs a complaint alleging that Shop Rite's negligent maintenance of its premises caused Mrs. Jerista's injuries. Shop Rite then filed a third-party complaint against New Jersey Automatic Door, Inc. (NJAD), alleging that NJAD negligently serviced the supermarket's electronic doors that caused the accident. In response, NJAD filed a counterclaim against Shop Rite.

In July 1989, Shop Rite served defendant Murray with interrogatories, requests for admissions, a statement of damages, a deposition notice, and a case information statement. Because Shop Rite never received a response to its requests, it moved to dismiss the complaint. In June 1990, the trial court granted the dismissal motion.

Defendant never informed plaintiffs that their complaint against Shop Rite had been dismissed. In the following years, the unsuspecting plaintiffs in letters and at meetings expressed concern to defendant about their case. In a 1991 letter, Mrs. Jerista informed defendant that she desired a "good settlement" because of the constant pain she suffered. In August 1996, defendant offered to speak with Mrs. Jerista's doctor about her long-term prognosis, although he did not follow through. In a 1997 letter, Mrs. Jerista inquired whether defendant needed assistance from a lawyer specializing in personal injury work and implored him to "be honest with" her and to tell her if he did not "see a huge settlement." In June 1998, at a meeting in defendant's office, Mr.

Jerista asked defendant why he had not brought in a personal injury attorney to assist him. Defendant replied, "[w]e don't need one. Everything is under control." That same year, Mrs. Jerista wrote to defendant, expressing her dissatisfaction with the lack of progress in the case and asking him to put together her file because she was hiring another attorney. Finally, in a January 1999 letter, Mrs. Jerista requested that defendant release the file to her, which he had promised to do several months earlier. During the nine-year period from the case's dismissal to this last letter, defendant never informed plaintiffs that their cause of action was dead.

In January 1999, plaintiffs retained Jack L. Wolff, Esq., to represent them in the Shop Rite case. Mrs. Jerista wrote to defendant directing him to forward the case file to Wolff, but he did not comply. Wolff then obtained from the Clerk of the Superior Court the case pleadings, which revealed that the Shop Rite suit had been dismissed in 1990.

Thereafter, Wolff filed a motion to reinstate the personal injury case against Shop Rite. In opposing that motion, Shop Rite's counsel averred that both her firm's file and the store's file relating to the 1987 accident had been destroyed. Counsel stated that witnesses and relevant information were no longer available and that "[i]t would be 'impossible' " to defend Shop Rite against a lawsuit involving an accident that occurred twelve years earlier.

For similar reasons, NJAD opposed plaintiffs' motion to rein-state the case. NJAD's counsel certified that the company was "unable to locate any records with reference to" the Hasbrouck Heights Shop Rite and "believe[d] that the automatic doors" involved in the accident were no longer present in the store. The trial court denied the motion to reinstate the case, but ordered defendant to turn his file over to Wolff.

## C.

In July 1999, plaintiffs filed a malpractice action against defen-dant, alleging that he negligently failed to prosecute their personal

injury lawsuit against Shop Rite. During the discovery period, plaintiffs deposed Joseph Marino, a sixteen-year employee of NJAD and its successor, Besam Automated Entrance Systems, Inc. Marino was unable to locate any company records relating to the automatic doors at the Shop Rite where Mrs. Jerista was injured. Marino had first-hand knowledge that the Hasbrouck Heights Shop Rite had "Stanley Swing" doors because he and his family had been shopping in that store since 1990. Marino's company did not install "Stanley Swing" doors, but it did service such doors, including those at the Shop Rite. Marino had serviced the Shop Rite doors as a technician for either Besam or NJAD, but never before 1990. He could not say that the Stanley doors he observed were the same ones that had been in place at the Shop Rite on the day of Mrs. Jerista's accident in 1987.

Plaintiffs did produce two seemingly relevant NJAD reports relating to the servicing of "Stanley Swing" doors at the Shop Rite. One report, dated several days before the accident, reads: "[f]ound operator internally damaged. Will order & return." Another, dated ten days after the accident, indicates that the NJAD technician replaced the "damaged operator." Neither plaintiffs nor defendant introduced an expert's report or testimony explaining the significance of those documents.

Plaintiffs retained a liability expert witness, Daniel M. Hurley, Esq. Hurley submitted a report concluding that defendant "deviated from the acceptable standards of care in the practice of law" by failing to prosecute an "excellent liability case." In support of that opinion, Hurley stated that defendant.failed to investigate the accident, plead both negligence and product liability claims, respond to interrogatories, take action after receiving a notice of motion to dismiss, and keep his clients apprised of the status of their case. Hurley also noted that if plaintiffs had not cooperated in answering interrogatories, as defendant contended, defendant should have moved to be relieved as counsel.

Defendant retained an expert witness, Diane Marie Acciavatti, Esq., whose report concluded "that while there were certain

deficiencies in [defendant's] representation [of plaintiffs], those deficiencies were not, within a reasonable degree of probability, a proximate cause of harm to the plaintiffs." Acciavatti was of the opinion that plaintiffs could not prove that defendant was the proximate cause of the loss of their case without presenting "a liability expert, such as an engineer, to establish that there was some defective condition that resulted in the door malfunctioning and causing injury to Mrs. Jerista."

On the basis of Acciavatti's report, defendant moved for summary judgment, asserting that plaintiffs could not prove proximate cause in the legal malpractice case without an expert who could testify about the operation of the automatic doors. Defendant also disputed plaintiffs' contention that the Shop Rite door that injured Mrs. Jerista had been replaced and was unavailable as evidence.

Plaintiffs countered by filing a cross-motion for summary judgment. Plaintiffs explained that they did not retain an expert to render an opinion concerning the malfunction of the automatic doors because of the lack of available records and information on the subject. They contended that retaining an expert to examine the present Shop Rite door would have been futile because the door probably had been replaced when the store was renovated in 1989 or 1990. They also argued that they did not need an expert, relying on *Rose v. Port of New York Authority,* 61 *N.J.* 129, 293 *A.*2d 371 (1972), for the proposition that when an automatic door malfunctions causing injury to a patron, the patron is entitled to a permissive inference that the door was negligently maintained. Last, plaintiffs submitted that defendant should bear the burden of proving that their suit against Shop Rite would not have succeeded because it was defendant's derelictions and cover-up that resulted in the loss or destruction of evidence needed to prosecute the malpractice action.

The trial court granted defendant's summary judgment motion on the ground that plaintiffs had made no showing that defendant's alleged professional breaches proximately caused their damages. The court rejected plaintiffs' argument that, even with-

out an expert, their personal injury lawsuit would have proceeded to the jury under the doctrine of *res ipsa loquitur*. In short, plaintiffs had not established, in the court's view, that they would have won a judgment against Shop Rite in the "suit within a suit."

In addition, the court believed that the underlying lawsuit was miscast as a personal injury case and instead should have been pled as a products liability action.[2] The court also did not agree with plaintiffs' assertion that defendant's cover-up denied them the evidence necessary to prosecute the malpractice claim. In that regard, the court chided plaintiffs for not making sufficient efforts to identify the Shop Rite door in operation on the day of the accident. Therefore, the court was disinclined either to shift the burden of proof to defendant or to allow an adverse inference to be drawn from the supposed loss of evidence.

The court denied plaintiffs' motion for reconsideration of its ruling. Plaintiffs then appealed.

### D.

A divided panel of the Appellate Division affirmed the grant of summary judgment. *Jerista v. Murray*, 367 *N.J.Super.* 292, 304, 842 *A*.2d 840 (App.Div.2004). In the majority's view, plaintiffs had the burden of proving not only that defendant breached a profes-

---

[2] Although that part of the trial court's ruling is not before us on certification, we take this opportunity to express our disagreement with it. Plaintiffs properly pled a cause of action sounding in premises liability. "Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." *Nisivoccia v. Glass Gardens, Inc.*, 175 *N.J.* 559, 563, 818 *A*.2d 314 (2003). Mrs. Jerista, a business invitee of Shop Rite, claimed that the store negligently maintained the mechanical door that caused her injuries. That was a valid theory of liability. *See, e.g., Ridenour v. Bat Em Out*, 309 *N.J.Super.* 634, 638, 642, 644–46, 707 *A*.2d 1093 (App.Div. 1998) (reversing grant of summary judgment to commercial recreational facility based on viability of premises liability claim and recognizing that "[a] business proprietor ... must provide a reasonably safe place for its business invitees to do that which is within the scope of the invitation to patrons"). Of course, that is not to say that plaintiffs could not have pursued a products liability claim.

sional duty, but also that they would have succeeded in the Shop Rite case had it been pursued. *Id.* at 302, 842 *A*.2d 840. Like the trial court, the Appellate Division majority determined that plaintiffs had not met that burden. *Ibid.*

The majority observed that proof of an accident, standing alone, "does not establish negligence." *Id.* at 304, 842 *A*.2d 840. It reasoned that because Shop Rite's automatic door was a complex instrumentality, plaintiffs were required to produce expert testimony to explain "the normal operation of the automatic door or a theory as to how or why the automatic door malfunctioned...." *Id.* at 302, 842 *A*.2d 840. The majority found that "[w]ith no expert to provide the court with a basis upon which to find sufficient evidence of improper operation and proximate cause, the doctrine of *res ipsa loquitur* cannot be invoked to establish premises liability against Shop Rite." *Ibid.* That was so, according to the majority, because " '[t]he requirement for expert testimony in complex instrumentality cases results logically from New Jersey law that *res ipsa loquitur* is inapplicable where the injured party fails to exclude other possible causes of the injury.' " *Id.* at 300, 842 *A*.2d 840 (quoting *Jimenez v. GNOC, Corp.*, 286 *N.J.Super.* 533, 544, 670 *A*.2d 24 (App.Div.), *certif. denied*, 145 *N.J.* 374, 678 *A*.2d 714 (1996)). Thus, an expert was essential to "establish proximate cause by way of a 'case within a case.' " *Id.* at 302, 842 *A*.2d 840.

Although the majority acknowledged that "in some circumstances involving complex instrumentalities, an expert may not be required to satisfy *res ipsa*," it decided that this was "not such a case." *Ibid.* Consequently, the majority ruled that Mrs. Jerista was "not entitled to a *res ipsa loquitur* inference on her underlying negligence action against Shop Rite." *Id.* at 298, 842 *A*.2d 840. As a result, plaintiffs fell short of a *prima facie* showing that they would have won the "suit within a suit." *Id.* at 302, 304, 842 *A*.2d 840.

The majority also recognized that defendant's professional derelictions might have impeded plaintiffs' ability to prove their "suit

within a suit." *Id.* at 303, 842 *A.*2d 840. Nevertheless, it determined that plaintiffs had "not demonstrated that the passage of time" prevented them from presenting their malpractice case in "the conventional framework." *Ibid.* Because plaintiffs did not "present evidence that Shop Rite failed to properly maintain the automatic doors, warn of any defective equipment, and adequately maintain the premises so as to prevent injury to its customers-invitees," the majority held that "summary judgment was properly granted." *Id.* at 304, 842 *A.*2d 840.

In dissent, Judge Kestin submitted that "it is remarkable—and paradoxical—that an attorney who so clearly breached his duties of due care and diligence . . . and so completely defaulted on his duty of fidelity and full disclosure as this defendant is alleged to have done, should benefit from his own transgressions." *Id.* at 304–05, 842 *A.*2d 840 (Kestin, P.J.A.D., dissenting). Judge Kestin felt that the courts "owe[d] plaintiffs a creative treatment of the issues so as not to deprive them of an opportunity to establish the truth of their allegations and the extent of the damages they suffered by reason of the derelictions claimed." *Id.* at 306, 842 *A.*2d 840. He suggested that "it would be appropriate to consider applying . . . in cases of this type, a legal-malpractice version of the 'increased risk of harm' standard available in certain medical malpractice actions." *Id.* at 307, 842 *A.*2d 840. Accordingly, Judge Kestin would have reinstated the case, and remanded for "the crafting of a procedure that deals justly and realistically with the issues involved." *Ibid.*

This appeal comes before us as of right based on the dissent in the Appellate Division. *R.* 2:2–1(a)(2).

## II.

### A.

In reviewing a grant of summary judgment, we must accept as true plaintiffs' account that defendant's professional derelictions led to the dismissal of their personal injury lawsuit against Shop

Rite. The principal issue before us is whether that dismissal was the proximate cause of plaintiffs' damages. Only if plaintiffs can prove that they would have obtained a favorable verdict against Shop Rite are they entitled to damages in the legal malpractice action. Plaintiffs argue that they made a *prima facie* showing that they could have won their lawsuit against Shop Rite.

In this case, Shop Rite's automatic door evidently malfunctioned when it struck and pinned Mrs. Jerista. Plaintiffs contend that it is a matter of common knowledge that an automatic door ordinarily does not swing closed on a customer unless the store owner negligently maintained the doors. That argument relies on the simple notion that the trier of fact does not need the assistance of an engineer or a person with peculiar expertise to reach that conclusion. Plaintiffs seek to invoke *res ipsa loquitur* to allow the jury to draw an inference that Shop Rite acted negligently. Such an inference would have gotten the case to a jury and forced Shop Rite to come forward and give the reasons for the malfunction of its door. Because they were entitled to such an inference, plaintiffs submit that the trial court should not have granted summary judgment in favor of defendant.

To support their position that summary judgment was improvidently granted, plaintiffs point out that defendant's professional missteps left them unable to determine the exact door in operation on the day of the accident. Accordingly, they suggest that even had they retained an expert, that expert could have rendered no more than a net opinion given the loss of evidence caused by defendant's concealment of the true status of their underlying suit. Defendant disagrees, basically for the reasons articulated in the majority Appellate Division opinion.

### B.

■ We begin our analysis by noting that a legal malpractice action has three essential elements: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and

(3) proximate causation of the damages claimed by the plaintiff." *McGrogan v. Till*, 167 *N.J.* 414, 425, 771 *A.*2d 1187 (2001). In this case, we are concerned only with causation.

Plaintiffs in this malpractice action proceeded in the conventional way by attempting to prove the "suit within a suit." In other words, plaintiffs presented "evidence that would have been submitted at a trial" in a personal injury case against Shop Rite, "had no malpractice occurred." *Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C.*, 179 *N.J.* 343, 358, 845 *A.*2d 602 (2004). Under that approach, plaintiffs had the burden of proving by a preponderance of the evidence that they would have won a favorable verdict against Shop Rite. *Ibid.*

To survive a grant of summary judgment in the legal malpractice action, plaintiffs had to show that they could have presented a *prima facie* case in the Shop Rite action. In that case, plaintiffs would have benefited from the high duty of care that landowners owe to business invitees. Under this State's premises liability law, a business owner owes a reasonable duty of care "to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." *Nisivoccia v. Glass Gardens, Inc.*, 175 *N.J.* 559, 563, 818 *A.*2d 314 (2003). Accordingly, Shop Rite had a duty to discover any dangerous condition on its property, including a defect in its automatic door that posed a safety hazard to its customers. *See Hopkins v. Fox & Lazo Realtors*, 132 *N.J.* 426, 434, 625 *A.*2d 1110 (1993).

The plaintiff bears the burden of proving that a store owner breached the duty of care owed to a business invitee. *See Buckelew v. Grossbard*, 87 *N.J.* 512, 525, 435 *A.*2d 1150 (1981). When applicable, the doctrine of *res ipsa loquitur* enables the plaintiff to make out a *prima facie* case. *Id.* at 526, 435 *A.*2d 1150. *Res ipsa loquitur*, Latin for "the thing speaks for itself," is a longstanding evidentiary rule grounded in principles of equity. *Myrlak v. Port Auth. of N.Y. & N.J.*, 157 *N.J.* 84, 94–95, 723 *A.*2d 45

(1999). It allows the factfinder to draw an inference of negligence against the party who was in exclusive control of the object or means that caused the accident. *Eaton v. Eaton,* 119 *N.J.* 628, 637–38, 575 *A*.2d 858 (1990). It places a strong incentive on the party with superior knowledge to explain the cause of an accident and to come forward with evidence in its defense. *See Brown v. Racquet Club of Bricktown,* 95 *N.J.* 280, 289, 471 *A*.2d 25 (1984).

The *res ipsa* doctrine "permits an inference of defendant's negligence 'where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect.'" *Buckelew, supra,* 87 *N.J.* at 525, 435 *A*.2d 1150 (quoting *Bornstein v. Metro. Bottling Co.,* 26 *N.J.* 263, 269, 139 *A*.2d 404 (1958)); *see also Szalontai v. Yazbo's Sports Café,* 183 *N.J.* 386, 398–400, 874 *A*.2d 507 (2005) (setting forth contours of *res ipsa* doctrine). In this case, we are concerned only with the first prong of the *res ipsa* test, i.e., whether the closing of a supermarket's automatic door onto a customer is the sort of occurrence that typically bespeaks negligence.

Whether an accident bespeaks negligence "depends on the balance of probabilities." *Buckelew, supra,* 87 *N.J.* at 526, 435 *A*.2d 1150. "[A] plaintiff need not exclude all other possible causes of an accident" to invoke the *res ipsa* doctrine, provided that the circumstances establish "that it is more probable than not that the defendant's negligence was a proximate cause of the mishap." *Brown, supra,* 95 *N.J.* at 287, 291–92, 295, 471 *A*.2d 25 (holding in case in which stairway abruptly collapsed that "the trial court properly instructed the jury to consider the issue of liability under the doctrine of *res ipsa loquitur*"); *see also Eaton, supra,* 119 *N.J.* at 639, 642, 575 *A*.2d 858 (holding that "the unexplained departure of a car from the roadway 'ordinarily bespeaks negligence'" on driver's part and that failure to give *res ipsa* instruction constituted plain error).

Thus, if *res ipsa* applies, the factfinder may draw " 'the inference that if due care had been exercised by the person having control of the instrumentality causing the injury, the mishap would not have occurred.' " *Brown, supra,* 95 *N.J.* at 288–89, 471 *A*.2d 25 (quoting *Bornstein, supra,* 26 *N.J.* at 269, 139 *A*.2d 404). Because the inference is purely permissive, the factfinder "is free to accept or reject" it. *Buckelew, supra,* 87 *N.J.* at 526, 435 *A*.2d 1150. Although *res ipsa* does not shift the burden of proof to the defendant, it ordinarily assures the plaintiff a *prima facie* case that will survive summary judgment. *Ibid.* When *res ipsa* applies, the defendant can only win a directed verdict if the defendant's countervailing proofs are so overwhelming that they destroy any reasonable inference of negligence and leave no room for reasonable doubt concerning defendant's lack of negligence. *Brown, supra,* 95 *N.J.* at 289, 471 *A*.2d 25 (citations omitted).

With those principles in mind, we must determine whether plaintiffs in this case were entitled to the *res ipsa* inference in the absence of expert testimony explaining the functioning of the Shop Rite automatic door. In addressing that issue we look to *Rose v. Port of New York Authority, supra,* a case strikingly similar to the one before us. In that case, the plaintiff, an airline passenger, was entering a terminal at John F. Kennedy International Airport when the automatic glass door through which he was passing "suddenly struck [him] in the face," knocking him to the ground and inflicting physical injuries. 61 *N.J.* at 133, 293 *A*.2d 371. The plaintiff "had no 'recollection of whether the door opened or closed or failed to open entirely prior to the blow.' " *Id.* at 134, 293 *A*.2d 371. The plaintiff filed a negligence suit against the Port Authority, which operated the airport, as well as the manufacturer and distributor of the glass door. *Id.* at 132, 293 *A*.2d 371.

At trial, the plaintiff presented as witnesses an employee of the door manufacturer who explained how the automatic door functioned, and an engineering expert who "suggest[ed] several things that might have gone wrong," but could not "pinpoint the actual operational failure that did occur." *Id.* at 135–37, 293 *A*.2d 371.

After the parties presented their proofs, the court dismissed the claims against the door's manufacturer and distributor, but allowed the case against the Port Authority to proceed. *Id.* at 132, 293 *A.*2d 371. Ultimately, the jury returned a verdict in the plaintiff's favor. *Ibid.* This Court concluded that the trial court properly denied the Port Authority's motion to dismiss because the plaintiff had established a *prima facie* showing of negligence. *Id.* at 136, 293 *A.*2d 371.

In reaching that decision, we recognized that it would "likely be insuperable" for the plaintiff's engineering expert to determine the door's "actual operational failure." *Id.* at 137, 293 *A.*2d 371. Thus, despite the expert's failure to establish a "specific kind of malfunction," we found that the plaintiff made out a *prima facie* case because "the occurrence bespeaks negligence." *Id.* at 136, 293 *A.*2d 371. Under the doctrine of *res ipsa loquitur,* the jury was allowed to draw an inference that the Port Authority was responsible for the negligent maintenance of the airport's automatic doors. *See id.* at 136–37, 293 *A.*2d 371. The *res ipsa* inference was permitted because "[m]embers of the public passing through automatic doors, whether in an airport, office building or supermarket do so generally without sustaining injury." *Id.* at 136, 293 *A.*2d 371. The Court concluded that the closing of an automatic door on a pedestrian is "unusual and not commonplace ... [and] strongly suggests a malfunction which in turn suggests neglect." *Id.* at 136–37, 293 *A.*2d 371. Because of the high probability that "the door did not function properly," we held that "it should not be the burden of the plaintiff to come forward with proofs as to the precise nature of the probable malfunction," but rather that "it is fair to call upon the defendant for an explanation." *Id.* at 137, 293 *A.*2d 371 (relying on *Wollerman v. Grand Union Stores, Inc.,* 47 *N.J.* 426, 430, 221 *A.*2d 513 (1966) ("The situation being peculiarly in the defendant's hands, it is fair to call upon the defendant to explain, if he wishes to avoid an inference by the trier of the facts that the fault probably was his.")).

The Appellate Division both in this case and in *Knight v. Essex Plaza*, 377 *N.J.Super.* 562, 578–79, 873 *A*.2d 659 (App.Div.2005), concluded that expert testimony explaining an automatic door's mechanisms and potential malfunctioning is required to trigger the *res ipsa* inference. In *Knight, supra,* the appellate panel found that there was "no express holding in *Rose* either that the plaintiff did or did not require the expert testimony he presented in order for the jury to be permitted to draw an inference of negligence." *Id.* at 572, 873 *A*.2d 659. In the case of a malfunctioning automatic door, to justify a *res ipsa* inference, *Knight, supra,* construed *Rose* to require an explanation from an expert "in lay terms of the possible ways in which the accident could have occurred that would more likely than not point to defendant's negligence as a substantial contributing cause." *Id.* at 578–79, 873 *A*.2d 659 (internal quotation marks omitted).

However debatable the point, we now conclude that *Rose*'s factual narrative containing the testimony of the door manufacturer's employee and the expert engineer was background to the case and did not imply that expert testimony was a necessary precondition for the *res ipsa* inference. As the *Rose* Court noted, the expert engineering testimony did not answer the question of why the automatic door malfunctioned. 61 *N.J.* at 136, 137, 293 *A*.2d 371. The *Rose* Court approved of the *res ipsa* inference because it is common knowledge that people ordinarily pass through automatic doors without suffering injury, and that an automatic door smashing into a customer "strongly suggests a malfunction which in turn suggests neglect." *Id.* at 136–37, 293 *A*.2d 371.

Even if we are mistaken about the breadth of *Rose, supra,* we nonetheless would find in this case that common knowledge is sufficient to entitle plaintiffs to the *res ipsa* inference. We do not see why in an automatic door malfunction case the *res ipsa* inference should be contingent on expert testimony. Under the paradigm described in *Knight, supra,* the expert will give a menu of things that might have gone wrong with the automatic door. In such cases, improper or lack of maintenance of the door always

will be a likely cause of the problem. Moreover, equitable principles suggest that a commercial business that invites a plaintiff onto its property for financial gain and that has exclusive control of an automatic door and superior knowledge about its maintenance should give an account of what went wrong. *See Nisivoccia, supra,* 175 *N.J.* at 566, 818 *A.*2d 314 (holding that given circumstances surrounding "dangerous condition caused by stray grapes" near supermarket's checkout, "negligence shall be inferred requiring the store to come forward and produce evidence of its due care").

Courts in a number of jurisdictions, some relying on our holding in *Rose, supra,* also have come to the conclusion that common knowledge will justify a *res ipsa* inference when automatic doors cause injury to blameless victims. *See, e.g., Stone v. Courtyard Mgmt. Corp.,* 353 *F.*3d 155, 157, 160–61 (2d Cir.2003) (citing with approval *Rose, supra,* in holding that plaintiff who was allegedly injured when automatic doors closed on her was entitled to *res ipsa* inference); *Balistreri v. Richard E. Jacobs Group, Inc.,* 322 *F.Supp.*2d 972, 978 (E.D.Wis.2004) (citing with approval *Rose, supra,* in holding that "automatic sliding doors do not ordinarily close on a person in the absence of negligence"); *Brewster v. United States,* 542 *N.W.*2d 524, 531–32 (Iowa 1996) (citing *Rose, supra,* as "leading case" dealing with automatic doors and *res ipsa loquitur,* agreeing "with the majority of courts that have concluded an automatic door malfunction does not occur in the absence of negligence," and noting that "it is within the common experience of lay people to come to this conclusion"); *Brown v. Scrivner, Inc.,* 241 *Neb.* 286, 488 *N.W.*2d 17, 19 (1992) (citing *Rose, supra,* and finding that "[a]utomatic doors do not, in the ordinary course of things, cause injury to those who pass through them"); *see also McDonald v. Aliquippa Hosp.,* 414 *Pa.Super.* 317, 606 *A.*2d 1218, 1221 ("The failure of the [automatic] doors [that injured the plaintiff] to sense an object in their path and remain open until safe passage had been secured was a malfunction which would not ordinarily occur if the doors had been inspected and properly maintained."), *appeal denied,* 532 *Pa.* 646, 614 *A.*2d 1142 (1992).

The automatic doors in those cases were located in a hotel, *Stone, supra,* a shopping center, *Balistreri, supra,* hospitals, *Brewster, supra,* and *McDonald, supra,* and a supermarket, *Brown, supra.* None of those cases appear to have conditioned the application of the *res ipsa* inference on the presentation of expert testimony.

In some sense, the present case is little different from the first reported decision in which *res ipsa loquitur* was applied, *Byrne v. Boadle,* 159 *Eng. Rep.* 299 (Ex. 1863). In that case, a passerby on Scotland Road in Liverpool was struck by a barrel that fell while being lowered from a flour warehouse. *Id.* at 299. The court held that the falling barrel was "prima facie evidence of negligence." *Id.* at 301. The court did not require the injured party to show that a barrel "could not fall without negligence," but rather placed the burden on the warehouse owner to produce "any facts inconsistent with negligence." *Ibid.*

An automatic door may be a highly sophisticated piece of machinery, but it *probably* does not close on an innocent patron causing injury unless the premises' owner negligently maintained it. That conclusion can be reached based on common knowledge without resort to expert testimony. A jury does not need an expert to tell it what it already knows. If the premises' owner, who has exclusive control over the automatic door, has proof that he is not to blame and that another is at fault, he must come forward to rebut the inference. For example, the owner is in the better position to say whether the malfunction was the result of improper inspection or a product defect for which others should be answerable.

We disagree with the Appellate Division's sweeping suggestion in this case that in almost all complex instrumentality cases a *res ipsa* inference will be conditioned on the production of expert testimony. *See Jerista, supra,* 367 *N.J.Super.* at 300–02, 842 *A.*2d 840. We also cannot agree with the Appellate Division's determination that " '[t]he requirement for expert testimony in complex instrumentality cases results logically from New Jersey law that *res ipsa loquitur* is inapplicable where the injured party fails to

exclude other possible causes of the injury.'" *Id.* at 300, 842 *A.*2d 840 (quoting *Jimenez, supra,* 286 *N.J.Super.* at 544, 670 *A.*2d 24).

The source of that misstatement of law was *Jimenez, supra,* a case involving a plaintiff who was thrown backwards on an ascending escalator when the right handrail stopped moving. 286 *N.J.Super.* at 537, 670 *A.*2d 24. The *Jimenez* court found that the trial court properly struck plaintiff's expert testimony on the basis that it was a "mere net opinion." *Id.* at 543, 670 *A.*2d 24. It then concluded that "[w]ithout an expert ..., the plaintiff has not excluded possible causes of the alleged incident and thus cannot take advantage of *res ipsa loquitur.*" *Id.* at 545, 670 *A.*2d 24. In reaching that conclusion, the *Jimenez* panel relied on *Hillas v. Westinghouse Electric Corp.,* 120 *N.J.Super.* 105, 114, 293 *A.*2d 419 (App.Div.), *certif. denied,* 62 *N.J.* 83, 299 *A.*2d 80 (1972), which in turn relied on *Jakubowski v. Minnesota Mining & Manufacturing,* 42 *N.J.* 177, 199 *A.*2d 826 (1964). However, *Jakubowski, supra,* a products liability case, did not stand for the proposition that expert testimony is generally required in a complex instrumentality case to establish the first prong of *res ipsa*—that the occurrence itself ordinarily bespeaks negligence. Instead, *Jakubowski, supra,* held that when a product causes injuries after leaving the defendant-manufacturer's control, it would be unfair to allow a *res ipsa* inference against the manufacturer unless the plaintiff introduced some evidence that the product was not mishandled or altered after leaving the factory. 42 *N.J.* at 182–84, 199 *A.*2d 826.[3]

In that case, the plaintiff, a mechanic at a Ford production plant, was injured when a sanding disc, attached to a "pneumatic

---

[3] Since *Jakubowski, supra,* we have held "that the traditional negligence doctrine of *res ipsa loquitur* generally is not applicable in a strict products liability case." *Myrlak, supra,* 157 *N.J.* at 90, 723 *A.*2d 45. Instead, "[w]e adopt[ed] ... the 'indeterminate product defect test' established in Section 3 of the *Restatement (Third) of Torts: Products Liability.*" *Ibid.* Section 3, which "is based on a *res ipsa* model," allows " 'for drawing an inference' in some product defect cases." *Id.* at 104, 106, 723 *A.*2d 45. "Section 3 of the Restatement in a products liability case does precisely what *res ipsa loquitur* does in a negligence context." *Id.* at 106–07, 723 *A.*2d 45.

rotary-type grinding machine" he was operating, broke "in half and struck him in the abdomen." *Id.* at 180–81, 199 *A.*2d 826. The plaintiff had taken over for another worker who had been using the machine and disc. *Ibid.* The plaintiff sued the disc's manufacturer, alleging that the product was defective. *Id.* at 179, 199 *A.*2d 826.

This Court noted that "[g]enerally, [*res ipsa loquitur*] cannot be invoked until it is shown that the instrumentality causing the injury was within the control of the defendant at the time of the mishap." *Id.* at 183, 199 *A.*2d 826. Nonetheless, this Court allowed that a *res ipsa* inference still might have been available, had the plaintiff offered some evidence that the defect was not caused after the disc left the manufacturer's control. *Id.* at 183–85, 199 *A.*2d 826. Because the plaintiff presented no evidence to eliminate misuse or overuse as the cause of the broken disc, the Court did not permit the *res ipsa* inference against the manufacturer. *Id.* at 183–86, 199 *A.*2d 826. Thus, *Jakubowski, supra,* addressed the proper scope of *res ipsa* when the defendant-manufacturer is no longer in exclusive control of the product that later causes an accident. We reject any reading of *Jakubowski, supra,* that imposes a categorical expert testimony requirement when a complex instrumentality within the exclusive control of the defendant causes an injury.

The question is not whether the instrumentality at issue is complex or simple, but whether based on common knowledge the balance of probabilities favors negligence, thus rendering fair the drawing of a *res ipsa* inference. *See Buckelew, supra,* 87 *N.J.* at 526–29, 435 *A.*2d 1150. Only when the *res ipsa* inference falls outside of the common knowledge of the factfinder and depends on scientific, technical, or other specialized knowledge is expert testimony required. *See id.* at 527–29, 435 *A.*2d 1150; *cf. N.J.R.E.* 702 (permitting expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue").

*Buckelew, supra,* a medical malpractice case, illustrates when expert testimony must be provided to allow jurors to draw a *res ipsa* inference. In that case, while conducting an exploratory laparotomy, the defendant surgeon inadvertently cut into the plaintiff's bladder. 87 *N.J.* at 518, 435 *A.2d* 1150. The plaintiff had to call an expert to explain the standard of care expected of the defendant physician. *Id.* at 520, 435 *A.2d* 1150. The plaintiff's expert testified that the defendant " 'deviated from the accepted standards of medical practice' " and asserted that " 'the very fact that this happened indicates that there was a lack of meticulousness or lack of care.' " *Id.* at 520–21, 435 *A.2d* 1150. In that situation, the jurors could not determine, based on their common knowledge, whether the surgeon's deviation "ordinarily bespeaks negligence." *Id.* at 526–27, 435 *A.2d* 1150. Rather, only with the assistance of expert testimony could the jurors decide the question. *See id.* at 527–28, 435 *A.2d* 1150. Therefore, the Court found that with the support of expert testimony the jury could draw a *res ipsa* inference. *Id.* at 528, 435 *A.2d* 1150.

In summary, an automatic door that closes onto and injures a customer entering a supermarket is an occurrence bespeaking negligence that falls within jurors' common knowledge. In this case, the automatic doors were under Shop Rite's exclusive control, and there was no indication that the accident was Mrs. Jerista's fault. When the average juror can deduce what happened without resort to scientific or technical knowledge, expert testimony is not mandated. The circumstances in this case invited a *res ipsa* inference, which means that plaintiffs could have made out a *prima facie* case against Shop Rite, which in turn leads to the inexorable conclusion that the Appellate Division erred in affirming summary judgment in this legal malpractice action. We therefore reverse and remand for trial.

### III.

Last, we address plaintiffs' argument that because defendant's alleged negligence and dishonesty led to the loss of evidence

necessary to prove their claim against Shop Rite (the "suit within a suit") and, ultimately, their malpractice claim against him, defendant should not benefit from his own wrongdoing. Plaintiffs first maintain that for nine years defendant intentionally deceived them into believing that their lawsuit was proceeding forward, when in fact he knew that it had been dismissed due to his non-compliance with discovery demands. By the time plaintiffs learned of their suit's dismissal, twelve years had passed since the accident. They further contend that defendant's prolonged concealment of the truth resulted in the destruction or loss of critical records kept by Shop Rite and NJAD concerning the identity, nature, and servicing of the automatic door that malfunctioned. Indeed, both Shop Rite and NJAD successfully opposed the reinstatement of the original complaint, in which they were named parties, precisely because they were hampered in their defenses due to loss of records, long-faded memories, and changed conditions at the accident site.

Defendant counters that plaintiffs' lack of cooperation with him led to the dismissal of their lawsuit, that he never misled them, and that they should have been aware of the disposition of their lawsuit. We express no opinion concerning where the truth lies between the competing claims. That is a matter for the jury. At trial, if the jury believes that plaintiffs were responsible for the lawsuit's dismissal, then their malpractice suit will fail. On the other hand, if the jury finds that defendant's professional defaults caused the dismissal, the jury must consider the other elements of the malpractice action and, in doing so, should consider whether defendant's conduct led to the spoliation of evidence.

 Spoliation typically refers to the destruction or concealment of evidence by one party to impede the ability of another party to litigate a case. *See Rosenblit v. Zimmerman,* 166 *N.J.* 391, 400–01, 766 *A.*2d 749 (2001). In civil litigation, depending on the circumstances, spoliation of evidence can result in a separate tort action for fraudulent concealment, discovery sanctions, or an adverse trial inference against the party that caused the loss of

evidence. *Id.* at 401–06, 766 *A.2d* 749. In this case, we deal only with the propriety of a spoliation inference.

 "Since the seventeenth century, courts have followed the rule 'omnia praesumuntur contra spoliatorem,' which means 'all things are presumed against the destroyer.'" *Id.* at 401, 766 *A.2d* 749. The spoliation inference permits the jury to infer that the evidence destroyed or concealed would not have been favorable to the spoliator. *Id.* at 401–02, 766 *A.2d* 749 (citing cases in which evidence was intentionally or deliberately destroyed). The inference serves the purpose "of evening the playing field where evidence has been hidden or destroyed." *Id.* at 401, 766 *A.2d* 749. Notably, a number of jurisdictions have crafted remedies in cases in which parties lost or destroyed critical trial evidence, even when the loss was not willful. *See, e.g., Reilly v. Natwest Mkts. Group Inc.,* 181 *F.*3d 253, 267–68 (2d Cir.1999) (holding that "[t]rial judges should have the leeway to tailor sanctions to insure that spoliators do not benefit from their wrongdoing" and "that a finding of bad faith or intentional misconduct is not a *sine qua non* to sanctioning a spoliator with an adverse inference instruction"), *cert. denied,* 528 *U.S.* 1119, 120 *S.Ct.* 940, 145 *L.Ed.*2d 818 (2000); *Sweet v. Sisters of Providence in Wash.,* 895 *P.*2d 484, 490–92 (Alaska 1995) (holding that defendant's negligent or intentional spoliation of evidence relevant to plaintiff's medical malpractice claim shifted burden of proof of legal causation and negligence away from plaintiffs); *Velasco v. Commercial Bldg. Maint. Co.,* 169 *Cal.App.*3d 874, 215 *Cal.Rptr.* 504, 506 (1985) (concluding "that a cause of action may be stated for negligent destruction of evidence needed for prospective civil litigation"); *Pub. Health Trust v. Valcin,* 507 *So.*2d 596, 599–601 (Fla.1987) (adopting rebuttable presumption of negligence where defendant health care provider could not produce key records in malpractice action).

Assuming *arguendo* that defendant misled plaintiffs about the true status of the Shop Rite case and failed to conduct discovery in that case, such dishonesty and dereliction created a high probability that records would be purged and evidence lost, making it

difficult, if not impossible, for plaintiffs to prosecute the "suit within a suit" malpractice action. By deliberately deceiving plaintiffs for nine years about the status of their case, defendant can be said to have consciously disregarded a substantial risk that key evidence would not be available when needed by plaintiffs.

If plaintiffs can make a threshold showing that defendant's recklessness caused the loss or destruction of relevant evidence in the underlying personal injury lawsuit, the jury should be instructed that it may infer that the missing evidence would have been helpful to plaintiffs' case and inured to defendant's detriment. The jury is free to accept or reject that inference—just like the permissive inference of negligence that jurors may draw under the doctrine of *res ipsa loquitur*. *See Buckelew, supra*, 87 *N.J.* at 526, 435 *A.*2d 1150. The spoliation inference will ensure that one party will not benefit by recklessly depriving another party of the evidence needed to present a claim or a defense. Needless to say, if the jury were to accept defendant's account, the spoliation inference would be rejected.

IV.

For the reasons discussed, we reverse the Appellate Division's affirmance of the grant of summary judgment in defendant's favor. We remand to the trial court for proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.