**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1675-23

ELARD TIMANA, JR.,

    Plaintiff-Appellant,

v.

ESTATE OF GARRET D.
CHRISTINO, DAVID CHRISTINO,
and ELARD L. TIMANA, SR.,

    Defendants-Respondents,

and

BUDGET TRUCK RENTAL, LLC,

    Defendants.

_____

ELARD TIMANA,

    Plaintiff-Appellant,

v.

ESTATE OF GARRET D.
CHRISTINO, DAVID CHRISTINO,
and ELARD L. TIMANA, SR.,

Defendants-Respondents,

and

BUDGET TRUCK RENTAL LLC,
and PV HOLDING CORP.,

Defendants.

Submitted April 9, 2025 – Decided June 17, 2025

Before Judges Currier and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket Nos. L-1986-21 and L-0991-22.

Durgana Law, LLC, attorneys for appellant (James V. Durgana, on the brief).

Margolis Edelstein, attorneys for respondent Estate of Garret D. Christino (Walter H. Iacovone, on the brief).

PER CURIAM

In this matter, in which plaintiff, Elard Timana, and decedent, Garret Christino, were involved in a motor vehicle accident, we consider the grant of summary judgment to defendant David Christino, individually and in the capacity of general administrator and administrator ad prosequndum of the

Estate of Garret D. Christino, David's[1] son (collectively defendants). The only admissible evidence presented in support of summary judgment was deposition testimony from plaintiff, his passenger, and David. Only plaintiff saw the accident between his vehicle and Garret's. The trial court found there was no evidence for a jury to conclude defendants were negligent as the information regarding the cause of the accident was only speculation. After a careful review, we discern plaintiff's uncontroverted factual testimony regarding the happening of the accident was sufficient to withstand the grant of summary judgment to defendants. We reverse.

Plaintiff testified he was driving a fourteen-foot Budget Rental box truck at the time of this accident in August 2020. He and his son, Elard Timana, Jr., were driving to Arkansas where Timana, Jr. was relocating. Plaintiff stated they had left their house on Long Island around 6:00 p.m.

Plaintiff described the night as clear and traffic was light. He testified that around 10:00 p.m. he was driving approximately 65 miles per hour southbound on the New Jersey Turnpike with his headlights on and listening to music. He said Timana, Jr. was resting and had his eyes closed.

---

[1] As several parties share surnames, we refer to them by their first names. No disrespect is intended.

A-1675-23

As he traveled in the left lane of the two southbound lanes, plaintiff saw a car stopped in his lane, perpendicular to traffic. This was the vehicle being driven by Garret. Plaintiff said he was "very close" to the car when he first saw it, only about "100 feet" away. Plaintiff did not see any headlights, taillights, or hazard lights activated on the stopped vehicle. He said it was very dark in the area. Plaintiff attempted to avoid colliding with the car by moving to the right but the front driver's side of his truck hit the car on the middle and back of the driver's side. He and his son had to be extricated from the truck.

Plaintiff testified he did not know how long the car was in the perpendicular position or how it got there. He never learned why the car was in the stopped perpendicular position.

Timana, Jr. was also deposed. He testified he was moving from New York to Arkansas. Timana, Jr. said his father was driving and he was sitting in the passenger seat of the box truck. Just prior to the accident, he was leaning against the passenger side window, but his eyes were open. He heard his father yell his name and then the accident happened. Timana, Jr. said his father tried to move to the right. After plaintiff brought the truck to a stop, Timana, Jr. called the police.

A-1675-23

David, a retired employee of the United States Department of Justice and Office of Homeland Security, testified that Garret was with their family at a neighbor's house in Hightstown for dinner on the night of the accident. Garret left, driving a Nissan Altima, to return to law school in Delaware. David testified the headlights, brake lights, and interior lights were all operational earlier that day, there were no issues with the brakes, and the vehicle was not scheduled for any routine maintenance.

At approximately 10:30 p.m., David received a call from one of Garret's friends, Kacey McCann, who said she was on the phone with Garret and thought he might have been in an accident. McCann told David "[s]he . . . heard Garret say, hello, hello, and . . . she heard a louder sound and then . . . [the phone] went dead."

David and his wife got in the car and began driving to where they believed the accident had happened. On the way, David stopped a state trooper, "showed him [his] police identification" and asked the state trooper to investigate what happened and call him with information.

David said he was contacted by a trooper from the accident scene who said Garret's injuries were "life-threatening." David and his wife drove straight to the hospital where they learned Garret had died. David also testified that a

5

trooper told him "they thought Garret had an incident or accident first, and then while the car was stopped," it was struck by plaintiff.

Defendants submitted two police reports in support of the summary judgment motion. The reports were prepared by the same trooper and listed the same time as the time of each accident. The first one described the one-car accident involving Garret's car. The report stated:

> Investigation revealed: [Garret] was traveling on the NJTP NS in the area of MP 3.3 in Carney's Point, NJ. [Garret's car] sustained a rear left tire blow-out, causing [Garret] to lose directional control of [his car]. [Garret's car] exited the roadway to the left, spinning in a clockwise manner, and struck the concrete barrier median. [Garret's car] reentered the roadway spinning in a clockwise manner and came to a final uncontrolled rest with the front of the vehicle facing east, perpendicular to the roadway, in the left lane.

The report indicated Garret was unable to give a statement. It did not list any witnesses to the accident.

The second report, regarding the accident with Garret and plaintiff, stated:

> On August 14, 2020, a two vehicle motor vehicle crash occurred on the New Jersey Turnpike NS roadway, in Carney's Point Township, Salem County, NJ. This crash was a right angle collision that resulted in fatal injuries to Driver Garret . . . .
>
> Preliminary investigation revealed that Garret . . . was operating a 2007 Nissan Altima south on the New Jersey Turnpike NS roadway and was involved in

A-1675-23

a single motor vehicle crash, in the area of milepost 3.3. The . . . Nissan came to rest, disabled, within the travel lanes . . . . [Plaintiff] was operating a 2014 Ford E-350 Box Truck south on the New Jersey Turnpike NS roadway, approaching the disabled . . . Nissan. The . . . Ford was occupied by right front seat passenger, . . . [Timana, Jr.]. In the area of milepost 3.27 the front of the . . . Ford struck the left side of the . . . Nissan. After impact with the . . . Ford, the . . . Nissan struck the concrete barrier prior to coming to an uncontrolled final rest. The . . . Ford came to a controlled rest on the west shoulder of the NS roadway. Garret . . . , the sole occupant in his vehicle, was pronounced deceased . . . [at] Salem Medical Center . . . on August 14, 2020.

This crash is currently under investigation.

Defendants moved for summary judgment, asserting there was no evidence to find negligence on their part. The court issued an oral decision, stating:

We have an accident. And so there's no presumption of negligence. We don't know what caused the accident. Why it happened. We have no idea if [Garret] . . . was . . . on h[is] phone, if it fell to the floor as you allege. . . . I try to put myself in terms of the position of a juror here. . . . I know it's summary judgment, but in terms of what evidence they would hear that would . . . give any favorable, reasonable inferences. And there just simply aren't any here.

What we have here would be a record that would leave the jury to purely speculate with respect to the happening of the accident, whether the phone had anything to do with it. Whether there was opportunity after . . . the accident happened for them to take evasive

7

action to turn the lights on, turn the hazards on. Move the car. Do something. The jury would simply be left to completely speculate as to all those things. So . . . I'm going to grant the application.

On appeal, plaintiff asserts the doctrine of res ipsa loquitor for the first time and argues he should have been afforded a permissive inference. He also contends the court erred in finding there was no evidence for a jury to find defendants were negligent.

We review the trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Therefore, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540).

The only witness to this accident was plaintiff. His uncontroverted testimony is that Garret's car was stopped across the left lane of the southbound New Jersey Turnpike. There were no lights on the vehicle. Plaintiff did not see

8

the car until he was "very close," to it and he took an unsuccessful evasive action attempting to avoid a collision.

The police reports were based on conjecture. The state troopers did not witness either accident. In fact, it is uncertain whether there was a first accident. Neither the trooper preparing the reports nor any other investigating law enforcement officer was deposed. There was no expert opinion on the causality of the flat tire on Garret's car.

Plaintiff established that Garret's car was stopped across plaintiff's lane, perpendicular to traffic and blocking plaintiff's route of travel. The area was very dark, and plaintiff said there were no lights on the car to warn of its presence. These are undisputed facts. It is sufficient evidence to withstand summary judgment and for a jury to consider whether Garret acted reasonably in the operation of his car that tragic night.

Because we conclude there was sufficient evidence of negligence to deny the grant of summary judgment, and because the issue was not raised before the trial court, we need not address plaintiff's arguments regarding the res ipsa loquitor doctrine. However, for completeness, our review of the facts and an analysis of the doctrine reveals plaintiff has not satisfied the required elements of the doctrine. The accident itself does not "bespeak negligence." Jerista v.

Murray, 185 N.J. 175, 192 (2005).  It is for a jury to determine whether, and to what extent, plaintiff and defendants were negligent.

Reversed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1675-23