**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3407-24

NEW JERSEY MANUFACTURERS
INSURANCE GROUP A/S/O
JOSEPH AND CLAIRE WEISS,

     Plaintiff-Appellant,

v.

JERSEY CENTRAL POWER &
LIGHT, INC.,

     Defendant-Respondent.

_____

Argued May 11, 2026 – Decided June 22, 2026

Before Judges Walcott-Henderson and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1632-23.

Dennis J. Crawford argued the cause for appellant (Crawford Slattery, attorneys; Dennis J. Crawford, on the briefs).

Stephen A. Rudolph argued the cause for respondent (Rudolph & Kayal, PA, attorneys; Stephen A. Rudolph, on the brief).

PER CURIAM

In this subrogation action, plaintiff New Jersey Manufacturers Insurance Group (NJM) appeals from two orders, dated April 22 and May 30, 2025, granting summary judgment in favor of defendant Jersey Central Power & Light, Inc. (JCP&L), dismissing NJM's complaint with prejudice, denying NJM's cross-motion for partial summary judgment and to compel discovery, denying reconsideration, and barring NJM's supplemental expert submission. Based on our review of the record and applicable legal standards, we affirm.

I.

We derive the following undisputed facts from the record. NJM insured the residence owned by the Weiss family in Flanders, who received electrical service from JCP&L through overhead utility lines connected to the property.

On April 29, 2023, a fire occurred at the Weiss home, causing substantial damage and prompting NJM to pay insurance proceeds to the Weiss family to cover losses from the fire damage. NJM subsequently filed a complaint against JCP&L as subrogee of its insureds on September 18, 2023, alleging negligence, strict liability, res ipsa loquitur, and breach of warranty, and seeking recovery as subrogee for payments allegedly exceeding $700,000. In their answer, JCP&L denied liability and asserted several affirmative defenses.

2

NJM retained two experts: Joshua Jamison, a fire investigator and origin and cause expert, and Michael Wald, an electrical engineer. Jamison concluded the fire was accidental and probably resulted from a failure in JCP&L's utility distribution system that caused an over-voltage event near the basement electrical panel. Wald opined that the fire was caused when a high-voltage primary line failed, fell onto lower secondary lines, and transmitted dangerous voltage into the residence. According to Wald, "[t]he fact that a hi-voltage power line broke, with no evidence of any tree branches or other objects in the area, demonstrates conclusively that this power line was in a seriously degraded condition. Power lines do not simply break and fall down without pre-existing damage." Wald based his conclusion on the Weiss's reports of flashing events and outages that occurred prior to the fire at issue, which he determined demonstrated preexisting deficiencies in the lines and "the previous incidents of tree branch contacts and tracking events caused the lines to be damaged and to degrade, ultimately failing during normal operating conditions on the day of the fire." He further concluded that "improper voltage, far in excess of what is allowed by [JCP&L's] tariffs and industry standards, was present on both the neutral and one or more of the line conductors, entered this home, beyond JCP&L's exclusive control and caused this fire," and "it is the failure of JCP&L

3

to maintain it[s] power lines in a responsible manner that is the proximate cause of this fire."

Following the close of discovery on January 11, 2025, JCP&L moved for summary judgment and to bar Wald's report and conclusions as inadmissible net opinions. JCP&L proffered the expert report of Robert Neary, P.E., who opined that JCP&L's "inspection procedures and intervals are approved by the [New Jersey Board of Public Utilities (BPU)], and that no deficiencies were observed during these inspections." Neary further opined that, during the inspection intervals, many things can cause damage to a primary wire, such as "rodent damage and lightning events," adding that "[b]etween inspections, there can be events that can cause damage to overhead power lines," which would not be observed until the next inspection.

NJM opposed the motion and cross-moved for partial summary judgment, seeking to proceed under theories of products liability, strict liability, and res ipsa loquitur, and also sought an order compelling the deposition of Neary. JCP&L opposed the cross-motion, arguing that the New Jersey Products

Liability Act (NJPLA), N.J.S.A. 2A:58C-1, subsumed any negligence-based claim for harm allegedly caused by a product.[1]

On April 22, 2025, a Law Division Judge granted summary judgment in favor of JCP&L and dismissed NJM's complaint with prejudice. The court found Wald's report constituted an inadmissible net opinion because it failed to identify applicable industry standards, regulations, or accepted methodologies supporting his conclusions. The court further found that although Wald was experienced in electrical engineering, his opinion attributing the fire to JCP&L's failure to maintain its high-voltage power lines "lacks the necessary factual foundation required under N.J.R.E. 703," and instead amounted to a bare conclusion unsupported by competent evidence.

The court also concluded Wald failed to satisfy the requirements outlined in N.J.R.E. 702 and 703 because he disregarded the evidence of prior inspections

---

[1] The NJPLA, N.J.S.A. 2A:58C-1 to -11, governs products liability issues in this State. When our Legislature enacted the NJPLA, it "established 'one unified, statutorily defined theory of recovery for harm caused by a product, and that theory is, for the most part, identical to strict liability.'" Dean v. Barrett Homes, Inc., 204 N.J. 286, 294 (2010) (quoting In re Lead Paint Litig., 191 N.J. 405, 436 (2007)). The NJPLA is "remedial legislation," enacted to "establish clear rules" in claims "for damages for harm caused by products, including certain principles under which liability is imposed." McDarby v. Merck & Co., 401 N.J. Super. 10, 97 (App. Div. 2008) (quoting Zaza v. Marquess & Nell, Inc., 144 N.J. 34, 47-48 (1996)).

A-3407-24

and offered only generalized assertions that the wire "would not have failed if it had been maintained in proper operating condition" without explaining what maintenance standard applied, how JCP&L deviated from that standard, or what evidence established negligent conduct.

Addressing the issues of negligence and proximate cause, the court found NJM failed to present competent expert testimony linking the wire failure to any negligent act or omission by JCP&L. The court noted that JCP&L presented evidence that the wires had been inspected pursuant to BPU procedures approximately fourteen months prior to the fire, and Wald failed to identify any standard of care and deviation from that standard as to JCP&L's maintenance of the utility lines.

Regarding NJM's res ipsa loquitur claim, the court found NJM failed to sufficiently eliminate other potential causes of the wire failure. Finally, NJM's cross-motion seeking partial summary judgment under strict liability and product liability theories was denied, as the court concluded that those claims were unsupported by the record given the absence of expert testimony on any cognizable defect.

NJM moved for reconsideration under Rule 4:49-2 and attached a supplemental certification from Wald, which allegedly cured any perceived

6

deficiencies in his original report, and requested a Rule 104 hearing. NJM also argued the court overlooked controlling law regarding its liability claims.

Approximately one month later, the motion court denied reconsideration, concluding NJM "failed to demonstrate that the court's original ruling was based on palpably incorrect reasoning, overlooked material evidence, or that new information warranted reconsideration," and entered an order on May 30, 2025. The court further concluded NJM failed to identify "any controlling legal authority or evidence that was overlooked that would compel a different outcome," rejected NJM's renewed strict liability and expert admissibility arguments, and explained that it "did not concede that electricity constitutes a 'product,'" but had "expressly declined to apply strict liability principles." The court also denied NJM's request for a Rule 104 hearing, concluding such a hearing "is not warranted where, as here, the proffered expert opinion is deficient on its face."

In the same order, the court granted JCP&L's cross-motion to bar NJM's supplemental expert report, dated March 31, 2025 and submitted April 1, 2025, finding NJM violated Rule 4:17-7 by failing to properly serve the report or provide the required Certification of Due Diligence, resulting in "prejudice to []

JCP&L and violat[ing] procedural rules designed to ensure fairness in discovery." NJM appealed.

## II.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). Summary judgment is appropriate only where "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). Under this standard, we must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); R. 4:46-2(c).

We owe no special deference to the motion judge's legal conclusions. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Moreover, issues of statutory interpretation are reviewed de novo. Palmer v. Flagship Resort Dev. Corp., 481 N.J. Super. 465, 488 (App. Div. 2025) (citing State v. Comm'r of Transp., 464 N.J. Super. 579, 584 (App. Div. 2020)).

## A.

Before us, NJM asserts the motion court erred in excluding Wald's report as a net opinion because he sufficiently explained that the fire resulted when JCP&L's high-voltage line failed, contacted secondary lines, and transmitted dangerous voltages into the home. NJM further maintains Wald's extensive experience in electrical engineering and utility investigations qualified him to render the opinions offered. NJM adds that Wald provided the requisite "why and wherefore" by explaining the mechanism of loss, the significance of prior outages and flashes, and the absence of evidence supporting alternative causes.

Additionally, NJM maintains that the motion court erred in failing to conduct a Rule 104 hearing, denying its request for res ipsa loquitur, declaring Wald was not competent to testify as an expert, and denying its cross-motion to compel Neary's deposition.

Although NJM first argues the court erred with respect to its opinion on the products liability and strict liability claims, we first address NJM's contention the court erred in granting summary judgment based on its finding Wald's expert opinion constitutes a net opinion. We address this issue at the outset given its bearing on the court's rejection of NJM's product's liability claim.

A-3407-24

NJM contends summary judgment was improvidently granted and that the motion court erred in finding Wald's expert report an inadmissible net opinion. N.J.R.E. 703 governs the foundation for an expert's testimony. It requires an expert's opinion to "be grounded in 'facts or data derived from (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence, but which is the type of data normally relied upon by experts.'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Polzo v. County of Essex, 196 N.J. 569, 583 (2008)).

"The corollary of that rule is the net opinion rule, which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data." State v. Townsend, 186 N.J. 473, 494 (2006). Accordingly, an expert is required to "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Crispino v. Township of Sparta, 243 N.J. 234, 257 (2020) (quoting Pierre, 221 N.J. at 54) (additional citations omitted). Stated differently, the net opinion rule directs "that experts 'be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable.'" Pierre, 221 N.J. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)).

Here, the motion record fully supported the court's order granting JCP&L summary judgment because Wald's original report "failed to reference any industry standards, regulations, or codes that would substantiate his conclusion," and therefore his opinion "lacks the necessary factual foundation required under N.J.R.E. 703."

As the motion court explained, Wald's opinion that the line "would not have failed if it had been maintained in proper operating condition" amounted to little more than a conclusory assertion unsupported by any identifiable maintenance standard, engineering protocol, or accepted utility practice. Indeed, Wald failed to identify what inspections or maintenance JCP&L should have performed, how they deviated from any recognized standard of care, or what condition should have been discovered during prior inspections. Instead, as JCP&L correctly argues, Wald "never 'point[ed] to a generally accepted, objective standard of practice,'" and improperly inferred negligent maintenance merely from the fact that the wire failed.

Moreover, although Wald opined the primary wire would not have failed if properly maintained, he did not identify any specific maintenance standard, explain how JCP&L deviated from accepted utility maintenance practices, or establish why the inspections conducted approximately fourteen months earlier

11

were deficient. Instead, as the motion court found, Wald offered only generalized assertions "untethered to any identifiable standard of care."

Additionally, Wald failed to adequately eliminate other potential causes of the wire failure. See Gore v. Otis Elevator Co., 335 N.J. Super. 296, 302-03 (App. Div. 2000). JCP&L presented evidence that the lines had been inspected pursuant to BPU-approved procedures, and Neary explained that damage to overhead power lines can occur between inspections from external causes such as rodents or lightning. Instead of meaningfully refuting these possibilities through testing, Wald largely inferred negligent maintenance from the occurrence of the failure itself. "The mere showing of an incident . . . is not alone sufficient to authorize the finding of an incident of negligence." Franco v. Fairleigh Dickinson Univ., 467 N.J. Super. 8, 25 (App. Div. 2021) (quoting Long v. Landy, 35 N.J. 44, 54 (1961)).

We have recently affirmed exclusion of an expert opinion criticizing a company's conduct because the expert failed to identify an applicable industry standard or objective methodology supporting his conclusions. Funtown Pier Amusements, Inc. v. Biscayne Ice Cream, 477 N.J. Super. 499, 516-17 (App. Div. 2024). As is the case here, Wald's report contained factual observations,

12

but failed to connect those observations to an identifiable standard of care. Wald's opinions thus rest on general assertions and conclusory statements.

We also reject NJM's contention that the motion court was required to conduct a Rule 104 hearing before excluding Wald's report. N.J.R.E. 104(a) provides a "judge may hear and determine" matters relating to "the qualification of a person to be a witness, or the admissibility of evidence" outside the presence of the jury. First, the decision to conduct a Rule 104 hearing rests within the sound discretion of the trial court. Kemp ex rel. Wright v. State, 174 N.J. 412, 432 (2002). In this case, however, the motion court was not required to hold a Rule 104 hearing where the expert report does adequately identify the basis for his or her conclusion. Id. at 427 (citing Landrigan v. Celotex Corp., 127 N.J. 404, 414 (1992)). Although such a hearing may be appropriate where admissibility turns on disputed foundational facts or additional testimony may clarify or elucidate the expert's methodology, the court was not required to hold a hearing where the defects in the report were apparent on their face.

As the motion court explained in denying reconsideration, "[s]uch a hearing is not warranted where, as here, the proffered expert opinion is deficient on its face." Thus, a hearing is not for the purpose of permitting NJM to supply

A-3407-24

new opinions, new standards, or new methodology that were absent from Wald's report.

Once Wald's opinions were excluded, NJM lacked competent expert testimony establishing breach of duty or proximate cause. The remaining record showed that a primary wire failed, contacted lower electrical wires, and caused an over-voltage condition to enter the home. But without admissible expert testimony explaining why that failure occurred and was caused by the negligent maintenance of JCP&L, NJM cannot establish a prima facie negligence claim. Accordingly, the motion court properly granted summary judgment dismissing NJM's negligence claims.

B.

We further reject NJM's contention, the court erred in denying their cross-motion on their products liability claim based on its finding electricity is not a "product" provided by JCP&L under the NJPLA. Relying on Aversa v. Pub. Serv. Elec. & Gas Co., 186 N.J. Super. 130 (Law Div. 1982), NJM argues that transmission of electricity through high-voltage power lines is considered abnormally dangerous activity which is subject to strict liability. In considering this argument, however, the court reasoned that "[g]iven [it]'s earlier finding that Wald's expert report is a net opinion, [NJM has] failed to provide sufficient

14

expert support to validate their strict liability theory. This lack of competent expert testimony undermines their position."

We are satisfied that once Wald's report was properly excluded as a net opinion, NJM was left without any admissible proof identifying a defect or demonstrating that such a defect caused the fire. Thus, NJM's argument lacks merit.

C.

We next turn to address NJM's contention that the court erred by rejecting its res ipsa loquitor claim. The doctrine of res ipsa loquitur, which means "the thing speaks for itself," is an "evidentiary rule grounded in principles of equity." Jerista v. Murray, 185 N.J. 175, 191-92 (2005) (quoting Myrlak v. Port Auth. of N.Y. & N.J., 157 N.J. 84, 95 (1999)). "Res ipsa loquitur is grounded in probability and the sound procedural policy of placing the duty of producing evidence on the party who has superior knowledge or opportunity for explanation of the causative circumstances." Buckelew v. Grossbard, 87 N.J. 512, 526 (1981) (citing Bornstein v. Metro. Bottling Co., 26 N.J. 263, 269 (1958)). The res ipsa doctrine "allows the factfinder to draw an inference of negligence against the party who was in exclusive control of the object or means that caused the accident." Jerista, 185 N.J. at 192.

A-3407-24

To establish res ipsa loquitur, a NJM must show "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the JCP&L's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the NJM's own voluntary act or neglect." Jerista, 185 N.J. at 192 (quoting Buckelew, 87 N.J. at 525). The first element of the doctrine is satisfied if NJM establishes "that it is more probable than not that . . . [JCP&L's] negligence was a proximate cause of the mishap." Ibid. (quoting Brown v. Racquet Club of Bricktown, 95 N.J. 280, 291-92 (1984)). "Whether an accident bespeaks negligence 'depends on the balance of probabilities.'" Ibid. (quoting Buckelew, 87 N.J. at 526). Thus, the doctrine is available to a NJM "if it is more probable than not that the [JCP&L] has been negligent." Myrlak, 157 N.J. at 95.

The court found the doctrine of res ipsa loquitor was not satisfied, stating:

> While the doctrine allows an inference of negligence when the event itself bespeaks negligence, the [NJM] [has] failed to establish that the circumstances surrounding the failure of the wire inherently suggest JCP&L's negligence. [JCP&L] has provided evidence showing that the wire was inspected only fourteen (14) months prior to the fire, and damage from external factors, such as lightning or rodent activity, could not be ruled out. This possibility of intervening causes undermines the [NJM's] argument that the occurrence itself is sufficient to infer negligence.

A-3407-24

Furthermore, the second requirement for res ipsa loquitur-exclusive control over the instrumentality causing the harm-also presents challenges to the [NJM's] motion. Although JCP&L retained control over the electrical transmission lines, [NJM] [has] not demonstrated that the failure of the wire was solely attributable to JCP&L's actions or inactions. The possibility of natural events, which JCP&L has highlighted in its defense, questions whether the wire's failure was a result of JCP&L's negligence, thereby defeating the inference of negligence that res ipsa loquitur is meant to establish. Given these considerations, the court denies the [NJM's] cross-motion to bring an alte1native claim under res ipsa loquitur.

We have no quarrel with the motion court's sound assessment of the first prong of the above enunciated test. We further note, on de novo review, that the failure of an overhead electrical wire does not necessarily "bespeak" negligence, as a number of possible causes existed for a utility line failure. Further, NJM proffered no proof to establish that the incident ordinarily would not have occurred absent JCP&L's negligent maintenance. Under these circumstances, the motion court's dismissal of NJM's res ipsa loquitur claim on summary judgment was not in error.

D.

Lastly, we turn to the judge's order denying NJM's motion for reconsideration under Rule 4:49-2. Reconsideration is a matter within the sound

discretion of the court. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). "It is not appropriate merely because a litigant is dissatisfied with a prior ruling or wishes to reargue a motion[.]" Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010). Instead, reconsideration should be limited to those cases "in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid. (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

Here, as the court found, NJM "failed to demonstrate that the court's original ruling was based on palpably incorrect reasoning, overlooked material evidence, or that new information warranted reconsideration," and instead merely attempted to "reargue matters already addressed or to relitigate issues that the court has resolved." The court further explained NJM "[did] not identify any controlling legal authority or evidence that was overlooked that would compel a different outcome," and therefore properly denied reconsideration.

Because the motion court properly excluded Wald's report as an inadmissible net opinion, NJM lacked competent expert evidence establishing negligence or proximate cause, failed to satisfy the elements of res ipsa loquitur,

and failed to demonstrate any basis warranting reconsideration. Accordingly, we discern no basis to disturb the court's orders granting summary judgment in JCP&L's favor, denying reconsideration, and barring NJM's supplemental expert submission. Further, we reject all of NJM's arguments as we are satisfied the court did not abuse its considerable discretion in denying NJM's motion.

Because the court properly excluded Wald's report and opinion and dismissed NJM's complaint, we need not reach NJM's remaining arguments.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division